# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| UIRC-GSA Holdings Inc., | ) |
| Plaintiff, | ) Case No. 15-CV-9518 |
| v. | ) Hon. Amy St. Eve |
| William Blair & Company, L.L.C., And Michael Kalt, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On October 11, 2016, Plaintiff UIRC-GSA Holdings, Inc. ("JCI") brought the present Complaint against Defendants William Blair & Company ("Blair") and Michael Kalt, collectively, "Defendants," alleging copyright infringement in violation of 17 U.S.C. § 101 *et seq*. and professional negligence. Both Blair and Kalt moved to dismiss Plaintiff's Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court denies Blair's motion to dismiss and grants Kalt's motion to dismiss without prejudice.

## BACKGROUND

Plaintiff is a Delaware Limited Liability Company located in Chicago, Illinois that is in the business of acquiring and operating properties leased to the U.S. General Services Administration ("GSA") to be financed by the sale of bonds through its subsidiaries. (R. 62, Third Am. Compl. ¶ 2.) Defendant Blair is a Delaware Limited Liability Company registered to do business in Illinois and with an office in Illinois. (*Id.* ¶ 3.) Blair was Plaintiff's investment

banker and placement agent in connection with Plaintiff's bond offering, the proceeds of which were used to acquire a portfolio of real estate properties. (*Id*. ¶ 6.) Kalt is an Illinois citizen and was Plaintiff's relationship manager at Blair. (*Id*. ¶¶ 6, 35.)

Plaintiff alleges that in order to successfully market a bond portfolio to provide the funds to acquire properties leased to the GSA, Plaintiff created and used a series of documents, including a Preliminary Private Placement Memorandum ("PPPM IV"), a Final Private Placement Memorandum ("FPPM IV"), and an Indenture of Trust ("Indenture IV"). (*Id*. ¶¶ 9, 18, 26.) Plaintiff provided the PPPM IV, FPPM IV, and Indenture IV to Defendant, and Defendant distributed it to potential investors to market the proposed bond offering. (*Id*. ¶ 10, 19, 27.) Plaintiff, in compliance with the relevant copyright laws, secured the exclusive rights and privileges to the copyright for the PPPM IV, FPPM IV, and Indenture IV. (*Id*. ¶ 10, 21, 29.) As a result, on July 21, 2015, the U.S. Copyright Office issued to Plaintiff U.S. Copyright Reg. No. TX 8-069-779 ("'799 Reg.") entitled Preliminary Private Placement Memorandum, which includes additional and revised text to the memorandum. (*Id*. ¶ 11.) The Copyright Office issued to Plaintiff similar copyrights for FPPM IV and Indenture IV entitled Final Private Placement Memorandum (Copyright Reg. No. TX 8-107-571) and Indenture of Trust (Copyright Reg. No. TX 8-107-552), both of which included additional and revised text. (*Id*. ¶¶ 20, 28.) Plaintiff alleges that it is the owner of all rights, title, and interest in and to the copyrights for PPPM IV, FPPM IV, and Indenture IV. (*Id*. ¶¶ 12, 21, 29.)

Plaintiff alleges that Defendants, with full knowledge of Plaintiff's rights, willfully infringed on Plaintiff's copyright by copying original portions of Plaintiff's copyrighted work for use in a Confidential Placement Memorandum ("CPM") in relation to a bond offering issued by Rainer GSA Portfolio I ("Rainer") on July 1, 2015. (*Id*. ¶¶ 13-14, 22, 30.) Specifically, Plaintiff

2

alleges that Defendant copied almost verbatim both protected and non-protected expression of Plaintiff's Indenture IV in the Indenture of Trust that Blair assisted Rainer in drafting for marketing bonds Rainer used to acquire GSA leased properties. (*Id*. ¶ 31.) Plaintiff claims that Defendants also distributed the infringing CPM and Indenture of Trust to potential investors in Rainer's bond offering. (*Id*. ¶¶ 15, 23, 32.) Plaintiff further alleges that Defendant Kalt was the relationship manager for both Plaintiff's bond offering and Rainer's offering, and engaged in conduct that encouraged or assisted Blair's copyright infringement of PPPM IV, FPPM IV, and Indenture IV. (*Id*. ¶ 36.)

## LEGAL STANDARD

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732, 736 (7th Cir. 2014). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). In determining the sufficiency of a complaint under the plausibility standard, courts must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiffs' favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016). In ruling on a Rule 12(b)(6) motion, district

courts may also consider documents attached to the pleadings without converting the motion into a motion for summary judgment, as long as the documents are referred to in the complaint and central to the claims. *See Geinosky v. City of Chicago,* 675 F.3d 743, 745 n. 1 (7th Cir. 2012).

**ANALYSIS**

**I.      Counts I-III—Copyright Infringement**

To establish copyright infringement, a plaintiff is required to prove two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Muhammad–Ali v. Final Call, Inc.*, 832 F.3d 755, 760 (7th Cir. 2016), *cert. denied sub nom. Final Call, Inc. v. Muhammad-Ali*, 137 S. Ct. 681 (2017) (quotations omitted). As to the second requirement, due to the rarity of direct evidence of copying, "a plaintiff may prove copying by showing that the defendant had the opportunity to copy the original (often called 'access') and that the two works are 'substantially similar,' thus permitting an inference that the defendant actually did copy the original." *Peters v. West*, 692 F.3d 629, 633 (7th Cir. 2012); *see also Nova Design Build, Inc. v. Grace Hotels, LLC*, 652 F.3d 814, 817–18 (7th Cir. 2011). The Court focuses on the "substantially similar" aspect of this requirement because it is determinative.[1] The substantially similar test, also known as the "ordinary observer" test, requires the Court to consider "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value." *Incredible Tech., Inc. v. Virtual Tech., Inc.,* 400 F.3d 1007, 1011 (7th Cir. 2005) (citation omitted). The Seventh Circuit has recently simplified the test for substantial similarity, namely, whether "the two works

---

[1] Defendants do not, at this stage, attack Plaintiff's claim to ownership. Defendants, however, do not waive their right to challenge Plaintiff's ownership of any of the copyrightable material included in the Placement Memoranda.

4

share enough unique features to give rise to a breach of the duty not to copy another's work."

*Peters*, 692 F.3d at 633–34. "The test for substantial similarity is an objective one." *JCW Inv.,*

*Inc. v. Novelty, Inc.,* 482 F.3d 910, 916 (7th Cir. 2007).[2]

Certain types of expression, however, are not protectable under copyright law. It is "a

fundamental tenet of copyright law that the idea is not protected, but the original expression of

the idea is." *JCW Inv.,* 482 F.3d at 917. Put differently, the "Copyright Act protects the

expression of ideas, but exempts the ideas themselves from protection." *Seng-Tiong Ho v.*

*Taflove*, 648 F.3d 489, 497 (7th Cir. 2011) (citation omitted). As the Supreme Court has

explained:

> The idea/expression dichotomy is codified at 17 U.S.C. § 102(b): "In no case does copyright protec[t] ... any idea, procedure, process, system, method of operation, concept, principle, or discovery ... described, explained, illustrated, or embodied in [the copyrighted] work." "Due to this [idea/expression] distinction, every idea, theory, and fact in a copyrighted work becomes instantly available for public exploitation at the moment of publication"; the author's expression alone gains copyright protection.

*Golan v. Holder*, 565 U.S. 302, 328–29 (2012) (citation omitted). "This limitation on copyright

protection promotes the purpose of the Copyright Act by assuring 'authors the right to their

original expression,' but also by 'encourag[ing] others to build freely upon the ideas and

information conveyed by a work.'" *Seng–Tiong Ho,* 648 F.3d 497 (citation omitted).

Additionally, it is well-established that common words and phrases are not protected

under the Copyright Act. *See Peters,* 692 F.3d at 635–36. In other words, "phrases that are

'standard, stock . . . or that necessarily follow from a common theme or setting' may not obtain

copyright protection." *Lexmark Int'l Inc. v. Static Control Components, Inc.,* 387 F.3d 522, 535

(6th Cir. 2004) (citation omitted). In line with this principle, the *scènes à faire* doctrine prohibits

---

[2] Because the test for substantial similarity is an objective test, district courts may determine copyright infringement claims at the motion to dismiss stage of litigation. *Hobbs v. John*, No. 12 C 3117, 2012 WL 5342321, at *3 (N.D. Ill. Oct. 29, 2012), *aff'd*, 722 F.3d 1089 (7th Cir. 2013).

5

copyright protection for "incidents, characters or settings which are as a practical matter indispensable, or at least standard, in the treatment of a given topic." *Incredible Tech.,* 400 F.3d at 1012 (citation omitted). Put differently, "a copyright owner can't prove infringement by pointing to features of his work that are found in the defendant's work as well but that are so rudimentary, commonplace, standard, or unavoidable that they do not serve to distinguish one work within a class of works from another." *Bucklew v. Hawkins, Ash, Baptie & Co., LLP,* 329 F.3d 923, 929 (7th Cir. 2003).

Here, Defendants do not, at least at this stage, contest that the expression in Plaintiff's Placement Memoranda over which Plaintiff claims copyright infringement is substantially similar to the expression in the CPM that Blair created for Rainer. (Def.'s Mem. in Supp. of its Mot. to Dismiss 7.) Defendants argue, however, that Plaintiff has failed to state a plausible copyright infringement claim because the expression, although similar, is comprised entirely of (1) ideas and themes and (2) common words and phrases, none of which is copyrightable, and when those unprotectable elements are excluded, no actionable substantial similarity exists between the memoranda at issue. Specifically, Defendants contend that the similar expression in the two memoranda includes the following: "the general description of the type of GSA revenue bonds," "the application of proceeds generated by the GSA revenue bonds," "the particular terms governing the issuance and redemption of GSA revenue bonds," "terminology and definitions pertaining to GSA revenue bonds," and the "manner in which proceeds from the GSA leases are applied or paid out." (*Id*. 7-8.) Defendants argue that this expression conveys general ideas and themes and common words and phrases, all of which are necessary components of the type of GSA revenue bond offered in both memoranda and are thus not protectable under copyright law.

(*Id*.) Essentially, Defendants argue that Plaintiff is attempting to "use its copyright registrations to claim monopoly over the entire concept of GSA revenue bonds and their usage." (*Id*. 9.)

Despite Defendants' arguments, they can point to no case law in which courts have analyzed bond documents or the bond market and found that the expression contained in bond documents is not copyrightable or protectable. In fact, as Plaintiff notes, courts that have analyzed similar bond offering documents have found that they were in fact protectable under copyright law. In *Merritt Forbes & Co. Inc. v. Newman Inv. Sec., Inc.*, 604 F. Supp. 943, 946–47 (S.D.N.Y. 1985), for example, the plaintiff and defendant both were underwriters of municipal bonds, which were offered to investors via disclosure documents, such as offering memoranda. The plaintiff developed a bond program involving long-term tax-exempt bonds that included an option for the holder to tender the bond back to the seller prior to its stated maturity. *Id*. at 947. The plaintiff, believing its bond program was unique in the bond market, registered a copyright over the documents offering this bond program. *Id*. When the defendant offered a similar bond program to investors, the plaintiff sued for copyright infringement. *Id*. at 948. The defendant moved to dismiss and for summary judgment claiming that the plaintiff's bond program was not copyrightable because all bond documents "follow a similar form and contain similar language by virtue of legal disclosure requirements, use of boilerplate and standardized language, and industry consensus" and because allowing the plaintiff copyright protection would give it "monopoly on the idea behind the bond offering, because the program . . . can only be expressed" in limited ways. *Id*. at 949, 952. The court rejected the defendant's argument and found that genuine issues of material fact existed as to whether the concepts conveyed in the plaintiff's bond documents were original and copyrightable. *Id*. at 953. The court refused to find, even after considering affidavits from two bond industry professionals arguing that the

language in the bond documents was standard and not copyrightable, that bond documents were not subject to copyright protection as a matter of law. *Id.* at 952-53.

Other courts analyzing similar financial, contractual, or legal documents have also been unwilling to find that the documents are not copyrightable or protectable. *See, e.g.*, *Mid Am. Title Co. v. Kirk*, 991 F.2d 417, 421–23 (7th Cir. 1993) (overturning dismissal of infringement claim because question of whether title commitment document was copyrightable was more "properly addressed at the summary judgment stage"); *Homeowner Options for Mass. Elders, Inc. v. Brookline Bancorp, Inc.*, 754 F. Supp. 2d 201, 209 (D. Mass. 2010) (denying motion for summary judgment and finding that mortgage forms were copyrightable); *Kingsbury Int'l, Ltd. v. Trade The News, Inc.*, No. 08 C 3110, 2008 WL 4853615, at *2 (N.D. Ill. Oct. 28, 2008) (denying motion to dismiss infringement claim because it could not determine whether plaintiff's business index was unprotectable expression at the motion to dismiss stage); *Phoenix Renovation Corp. v. Rodriguez*, 439 F. Supp. 2d 510, 516–17 (E.D. Va. 2006) (finding at summary judgment stage that expression in customer contract was not boilerplate and thus was copyrightable); *Am. Family Life Ins. Co. of Columbus v. Assurant, Inc.*, No. 1:05-CV-1462-BBM, 2006 WL 4017651, at *6–8 (N.D. Ga. Jan. 11, 2006) (finding that plaintiff's insurance policies were copyrightable).

Here, Defendants do not dispute that the expression in Plaintiff's Placement Memoranda is substantially similar to the expression in the Placement Memoranda that Blair created for Rainer. Defendants, however, ask the Court to find that the similar language in the two documents is entirely comprised of words and themes that are common to all GSA bond memoranda. Based on *Merritt Forbes*, and the other cited case law, bond documents and similar financial documents can in fact contain copyrightable protected expression that is not so general

and boilerplate as to constitute common words or themes. In *Merritt Forbes*, the defendant submitted affidavits from bond industry professionals asserting that the language in bond documents was standard and not copyrightable, and the court still rejected the defendant's argument that the bond documents at issue contained expression common to all bond documents. *Merritt Forbes*, 604 F. Supp. at 952-53. Here, Defendants have submitted no such affidavits, and the Court, at this procedural stage, without any factual record regarding the nature of the GSA bond market or the expression contained in bond documents, cannot find that the allegedly copied expression in the Placement Memoranda is unprotectable as a matter of law or that the expression is common to all bond documents.

Importantly, this is not a case involving "simplistic works" that the Court can analyze under the ordinary observer test, such as songs, poems, or television shows. *Francescatti v. Germanotta*, No. 11 CV 5270, 2014 WL 2767231, at *8 (N.D. Ill. June 17, 2014) (noting that "[w]hile simplistic works may be determined by the spontaneous response of the ordinary observer, more complex works may require expert testimony in order to help the trier of fact"). Unlike songs or poems, GSA bond documents are complex financial documents relating to a niche investment market, and despite Defendants' contentions, the Court, like the court in *Merritt Forbes*, cannot at this stage determine that all the copied expression is "boilerplate and standardized language" in the GSA bond market. *Id*. at 949. Defendants, like the defendant in *Merritt Forbes*, claim that allowing Plaintiff copyright protection would give it "monopoly on the idea behind the bond offering." That may be true, but without more information on the GSA bond market and the types of expression included in bond documents, the Court cannot reach that conclusion at this stage.

9

Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's copyright infringement claims. Accepting the Complaint's factual allegations as true and drawing all reasonable inferences in Plaintiff's favor, Plaintiff has alleged sufficient facts to state plausible copyright infringement claims.

## II.     Count IV—Contributory and Vicarious Infringement Against Michael Kalt

In Count IV, Plaintiff alleges that Kalt should be held personally liable for contributory and vicarious infringement because he is a partner at Blair and as Plaintiff's relationship manager "engaged in conduct that encouraged or assisted Blair's direct copyright infringement." (Third Am. Compl. ¶ 36.) Kalt argues that he cannot be held personally liable for contributory or vicarious infringement because Plaintiff failed to make a "special showing" that Kalt did anything beyond the scope of his duties at a Blair relationship manager.[3] (R. 78, Def. Kalt's Mem. in Supp. of his Mot. to Dismiss 4.)

The Supreme Court has held that "[o]ne infringes contributorily by intentionally inducing or encouraging direct infringement . . . and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930–31 (2005) (citations omitted). Specifically, to sustain a claim for contributory copyright infringement, the plaintiff must prove the defendant engaged in "personal conduct that encourage[d] or assist[ed] the infringement." *Flava Works, Inc. v. Gunter*, 689 F.3d 754, 757 (7th Cir. 2012). To sustain a claim for vicarious copyright infringement, the plaintiff must prove that "the defendant: (1) at all material times possessed the right and ability to supervise the infringing activity; and (2) has a direct financial interest in the

---

[3] Kalt and Blair also contend that the Court must dismiss Count IV because Plaintiff's direct infringement claims fail. Having found above that Plaintiff's direct infringement claims still stand, the Court focuses on Kalt's other argument for dismissal.

infringer's activity." *Frerck v. John Wiley & Sons, Inc.*, No. 11-CV-2727, 2014 WL 3512991, at *9 (N.D. Ill. July 14, 2014). Additionally, as the parties agree, the seminal Seventh Circuit case of *Dangler v. Imperial Mach. Co.*, 11 F.2d 945 (7th Cir. 1926), still provides the governing law regarding whether corporate officers can be held personally liable for their corporation's infringement. In *Dangler*, the court explained:

> In the absence of some special showing, the managing officers of a corporation are not liable for the infringements of such corporation, though committed under their general direction. . . It is when the officer acts willfully and knowingly— that is, when he personally participates in the manufacture or sale of the infringing article (acts other than as an officer), or when he uses the corporation as an instrument to carry out his own willful and deliberate infringements, or when he knowingly uses an irresponsible corporation with the purpose of avoiding personal liability— that officers are held jointly with the company.

*Id*. at 947.

Here, Plaintiff's allegations claim that Kalt is a partner at Blair, was the relationship manager for both Plaintiff and Rainer's bond offering, and that he encouraged Blair's copyright infringement. (Third Am. Compl. ¶¶ 35-36.) These boilerplate assertions are insufficient to support a claim for vicarious or contributory infringement under *Dangler* or the specific standards for each type of infringement. First, under *Dangler*, Plaintiff's bald assertion that Kalt "encouraged or assisted" Blair's infringement is insufficient to make a "special showing" that Kalt "personally participated in the manufacture or sale" of the Placement Memoranda at issue here. *Dangler*, 11 F.2d at 947. Plaintiff only alleges that Kalt was the relationship manager for Plaintiff and Rainer, but offers no facts about the actions Kalt took as a relationship manager, his responsibilities with regard to the Plaintiff or Rainer, or his part in the sale or distribution of the infringing documents. Plaintiff also alleges no facts about the role Kalt personally played in the alleged infringement and alleges no details about the benefits Kalt received from the infringing activity. Therefore, on the *Dangler* precedent alone, Plaintiff's infringement claim against Kalt

11

fails. *See FM Indus., Inc. v. Citicorp Credit Servs., Inc.*, No. CIV.A. 07 C 1794, 2007 WL 4335264, at *4 (N.D. Ill. Dec. 5, 2007) (dismissing infringement claim against individual defendants because plaintiff made no "special showing" and did not show that defendant did anything "beyond the scope of their duties as officers" or profited personally).

In addition to failing under the *Dangler* standard, Plaintiff's conclusory allegations are also insufficient under the specific standards for contributory and vicarious liability. With regard to vicarious infringement, Plaintiff's allegations fail because they do not allege or even support an inference that Kalt had a direct financial interest in or received any personal financial benefit from the alleged infringing activity. *Flava Works*, 2012 WL 2459146, at *4 (granting motion to dismiss because plaintiff failed to "allege any facts to suggest that [the defendant] received a direct financial benefit as a result of the infringing activity"). With regard to contributory infringement, Plaintiff's allegations merely repeat in boilerplate fashion the Seventh Circuit requirement that a defendant's personal conduct must have "encourage[d] or assist[ed] the infringement." This conclusory allegation, unsupported by any facts regarding Kalt's role in the infringement, is insufficient to state a claim for contributory infringement against Kalt as an individual. *Seals v. Compendia Media Grp.*, No. 02 C 0920, 2003 WL 731369, at *7 (N.D. Ill. Feb. 28, 2003) (dismissing contributory infringement claim against individual defendants because plaintiff "inadequately alleged any facts to support his conclusion that they knew of, and induced, caused, or materially contributed to, the infringing conduct").

In sum, Plaintiff's boilerplate allegations of contributory and vicarious liability lack the factual detail required to show that Kalt is personally liable for the alleged infringement. In other words, Plaintiff's "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted).

Accordingly, the Court grants without prejudice Kalt's motion to dismiss Plaintiff's contributory and vicarious infringement claims against him.

### III. Count V—Professional Negligence

In Count V, Plaintiff alleges that Defendants breached their duty of care to Plaintiff. In its Motion to Dismiss, Blair argues that the Court must dismiss Count V because it is premised on Plaintiff's copyright infringement allegations. Since Plaintiff's copyright allegations still stand, Blair's argument fails. Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's professional negligence claim.

## CONCLUSION

For these reasons, the Court denies Blair's Rule 12(b)(6) motion to dismiss Plaintiff's infringement and professional negligence claims and grants Kalt's motion to dismiss Plaintiff's contributory and vicarious infringement claims without prejudice.

**Dated:** March 29, 2017

                                              **ENTERED**

                                              _____
                                              **AMY J. ST. EVE
                                              United States District Court Judge**