## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

UIRC-GSA HOLDINGS, LLC, a Delaware
limited liability company,

        Plaintiff,

    vs.

WILLIAM BLAIR & COMPANY, LLC,
a Delaware limited liability company, and
Michael Kalt, an Illinois citizen,

        Defendants.

Civil Action No.: 1:15-cv-09518

Judge: Honorable Amy J. St. Eve
Magistrate: Honorable Michael Mason

WILLIAM BLAIR & COMPANY, LLC,

        Counter-Plaintiff,

    vs.

UIRC-GSA HOLDINGS, LLC and URBAN
INVESTMENT RESEARCH CORP.,

        Counter-Defendants

### MOTION TO DISMISS

Plaintiff/counter-defendant UIRC-GSA Holdings, LLC, (UIRC) and third-party defendant Urban Investment Research Corporation (Urban Investment) move this Court pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss counts II, III, IV and V of the complaint filed against them in this case by defendant/counter-plaintiff William Blair & Company, LLC (Blair).[1]

---

[1] UIRC and Urban Investment have answered count I.

The basic facts of this case are set out in the Court's March 29, 2017, Opinion (Dkt. #87). The few additional allegations necessary to frame the issues presented by this motion are recited in the arguments set forth below. Because the interests of UIRC and Urban Investment are aligned with respect to the issues presented by the motion, we treat them as a single entity.

## Count II

In count II of its counterclaim, Blair claims joint ownership of the copyrights registered by UIRC, then seeks an accounting of the profits from those copyrights. To establish the ownership rights on which its claim to profits depends, Blair must first establish that it is a co-owner of a joint work under §101 of the Copyright Act, 17 U.S.C. §101. The test to establish co-ownership of a joint work was announced in *Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061 (7th Cir. 1994). It obligates a party claiming joint ownership to plead and prove two things: (1) the parties' mutual intent, at the time of their collaboration, to create a joint work, and (2) the parties' separate contributions of independently copyrightable material. *Id* at 1068-71. Blair's claim, which relies entirely on its bald assertion that it "assisted with the preparation of the placement memoranda" (counterclaim, ¶41), falls woefully short of alleging facts that would satisfy either of the two requirements for establishing itself as the co-owner of a joint work.

The requirement of showing intent to create a joint work is intended to make clear that simple collaboration alone is not enough under the law. As the court held in *Erickson*, "focusing solely upon the fact of contemporaneous input by several

parties does not satisfy the statutory requirement that the parties intend to merge their contributions into a unified work." 13 F.3d at 1069. And while mutual intent is required, it is particularly important to show that the dominant author intended to share authorship. *Respect Inc. v. Comm. on Status of Women,* 815 F. Supp. 1112, 1120 (N.D. Ill. 1993). The test of that intent is objective. *JCW Investments, Inc. v. Novelty, Inc.*, 289 F. Supp. 2d 1023, 1032 (N.D. Ill. 2003), *aff'd,* 482 F.3d 910 (7th Cir. 2007). Accordingly, Blair's bare allegation that it "assisted with the preparation of the placement memoranda" is a mere claim of collaboration that does not come close to alleging that UIRC objectively intended to share authorship of the work.

Nor has Blair come close to pleading the second prong of the *Erickson* test: that it contributed independently copyrightable material. To meet this requirement, Blair must identify its "specific contributions" to the joint work. *Erickson,* 13 F.3d at 1072; *Woods v. Resnick*, 725 F.Supp.2d 809, 819-20 (W.D. Wis. 2010). It has not even tried. To the contrary, the thrust of its position to date has been that there is nothing copyrightable in UIRC's documents. If it now wishes to take the opposite position, even in the alternative, it must at a minimum identify the specific copyrightable material that it claims to have contributed to the joint work.

## Count III

Count III alleges that under a letter agreement between UIRC and Blair, UIRC is liable to Blair for any damages, costs or attorneys' fees that are assessed against it in this suit. In other words, the claim alleges that UIRC's suit against Blair is a pointless exercise, as Blair can force UIRC to pay it the amount of any

damages that it is ordered to pay UIRC (and also force UIRC to pay the cost of its defense). However, it is clear from its face that the agreement applies only to third party claims and not to direct actions between the contracting parties.

On the question of whether an indemnity agreement extends to direct actions between the parties, Illinois law directs courts to look at the specific language in the contract. *ImagePoint, Inc. ex rel. Martin v. BFS Retail & Commercial Operations, LLC*, 2014 WL 7335167 (N.D. Ill.). Thus, each case turns on the particular contract language. *Id.*; *Tatar v. Maxon Construction Co.*, 294 N.E.2d 272, 273-74 (Ill. 1973).

In conducting this analysis, the court must fairly and reasonably assess the parties' intent based upon an evaluation of all of the provisions in the contract. *Open Kitchens, Inc. v. Gullo Int'l Dev. Corp.*, 126 Ill. App. 3d 62, 65; 466 N.E.2d 1313, 1315 (1984). If a contract does not expressly limit itself to third party claims, or expressly include direct claims language, provisions that unmistakably relate to third-party claims, such as those requiring that notice be given to the indemnitor or allowing the indemnitor to assume the defense, provide a clear indication that the contract is limited to third party claims. *ImagePoint*, 2014 WL 7335167, at *8.

The agreement at issue here contains four provisions, which as a group make up more than half the contract, that unmistakably relate to third-party claims and that would be rendered without force and effect under Blair's view of the contract. First, there is a notice provision providing that "in case any proceeding shall be instituted involving Blair or any other indemnified party, such party shall promptly

notify [UIRC]." Notice provisions unmistakably relate to third party claims, *ImagePoint*, 2014 WL 7335167, at *8, as UIRC needs no notice of its own suit.

Second, the contract provides that "[UIRC] may assume the defense of the matter and may retain counsel reasonably satisfactory to the indemnified party to represent the indemnified party and any others the [UIRC] may designate in such proceeding…" This provision gives UIRC the right to choose Blair's counsel in this suit, a patently absurd result. Not surprisingly, a nearly identical provision was found to be unmistakably related to third party claims in *Hooper Assoc., Ltd. v. AGS Computers, Inc.,* 74 N.Y.2d 487, 549 N.Y.S.2d 365 (1989), a case that was cited with approval on this point in *ImagePoint.* 2014 WL 7335167, at *8.

Third, the contract requires mutual notification and consent between UIRC and Blair regarding settlement. These rights unmistakably relate to third-party claims for the same reasons the notice provisions do, namely that such clauses have no logical application in suits between the contracting parties.

Finally, the agreement states that UIRC will "indemnify and hold harmless" William Blair & Company. Illinois courts find that the inclusion of such language "strongly suggests that this provision only applies in the event [indemnitee] is found liable to a third party as a result of [indemnitor]'s actions or inactions in the context of the contractual relationship." *Hallmark Ins. Adm'rs, Inc. v. Colonial Penn Life Ins. Co.,* 697 F. Supp. 319, 328 (N.D. Ill. 1988), *aff'd,* 990 F.2d 984 (7th Cir. 1993).

Accordingly, because Blair's construction of the agreement at issue would render a large portion of it without force and effect if it were applied in the manner

pled by Blair, it cannot be a reasonable interpretation. To the contrary, the contract is susceptible to one reasonable interpretation: that it covers only third party claims and does not cover direct claims.

### Count IV

Count IV is a confusing amalgam of wild claims. It appears to allege that UIRC breached two separate contracts—its original engagement agreement with Blair and the indemnity agreement, which is attached to it—and that it committed negligent acts. The conduct that is alleged to be both a breach of two contracts and negligent is: (1) filing this suit; (2) filing a specific claim in this suit; (3) demanding a jury in this suit; (4) "refusing to honor its indemnity obligations;" (5) "other unfair acts and practices;" and (6) suing Rainier and then settling with Rainier without obtaining a release of Blair (Counterclaim, ¶¶52, 54). The flaws in this claim are both numerous and obvious.

Blair does not identify what provisions of the two contracts were supposedly breached. It does not explain how UIRC refused to honor its indemnity obligations or how this claim differs from the one it made in count III. It does not say what acts are negligent, much less why they are. It does not explain how it has a right to bring claims like these over the filing of this suit, as the only causes of action Illinois allows to challenge the filing of a civil lawsuit are for malicious prosecution or abuse of process. *Havoco of Am., Ltd. v. Hollobow*, 702 F.2d 643, 647 (7th Cir. 1983). It does not even begin to explain how it can possibly be a breach of contract or negligence to demand a jury. It does not say what "other unfair acts or practices"

it is complaining about. It does not explain why UIRC was not permitted to settle its claims against Rainier without obtaining a release of Blair. And it does not even attempt to explain how it can bring two contract claims and a negligence claim, all based on this muddle of allegations, in a single count.

## Count V

Count V alleges that UIRC and Urban Investment tortiously interfered with Blair's economic and business relationship with Rainier and with "the possibility of future economic relationships and/or business advantages with other competitors of UIRC that are similarly placed and interested in engaging Blair to assist them with the creation and issuance of GSA revenue bonds." (Blair complaint, ¶58). The flaw in this count is its failure to allege that UIRC did anything tortious.

The critical allegation here is in paragraph 60 of the complaint, which asserts that "UIRC is using frivolous copyright infringement claims to corner the market for GSA revenue bonds, and to push competition (both funds and financial advisors) out of the market." Filing civil litigation, however, simply cannot form the basis of a tortious interference claim. *Rubloff Dev. Grp., Inc. v. SuperValu, Inc.*, 863 F.Supp.2d 732, 746 (N.D. Ill. 2012) ("Illinois, for policy reasons, does not recognize the filing of a lawsuit, even a baseless one, as grounds for a tortious interference suit."); *Havoco of America, Ltd., supra.*

## CONCLUSION

WHEREFORE, plaintiff/counter-defendant UIRC-GSA Holdings, LLC, and third-party defendant Urban Investment Research Corporation respectfully request

that this Court dismiss counts II, III, IV and V of the complaint filed against them by William Blair & Company.

Date: May 26, 2017                    Respectfully submitted,

                                      **UIRC-GSA Holdings, LLC, and Urban Investment Research Corporation,**

                                      By: /s/ Eugene J. Schiltz
                                              One of their attorneys

Sean B. Crotty
Eugene J. Schiltz
Francis C. Wilkie
CROTTY & SCHILTZ, LLC,
120 N. LaSalle, 20th floor
Chicago, IL 60602
(312) 444-1000
scrotty@crottylaw.com
gschiltz@crottylaw.com
fwilkie@crottylaw.com

## CERTIFICATE OF FILING AND SERVICE

I, Eugene J. Schiltz, hereby certify that on May 26, 2017, I electronically filed this **Motion to Dismiss** with the Clerk of the Court using the ECF system, which will send notification to all e-filing participants of record.

/s/ Eugene J. Schiltz