IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UIRC-GSA Holdings Inc., | ) |
| Plaintiff, | ) Case No. 15-CV-9518 |
| v. | ) Hon. Amy St. Eve |
| William Blair & Company, L.L.C., And Michael Kalt, | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

On April 12, 2016, Plaintiff UIRC-GSA Holdings, Inc. ("UIRC") brought its Fourth Amended Complaint against Defendants William Blair & Company ("Blair") and Michael Kalt, collectively, "Defendants," alleging copyright infringement in violation of 17 U.S.C. § 101 *et seq*. and professional negligence. Blair moved to dismiss Plaintiff's professional negligence claim—Count VI—pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (R. 91, Blair's Mot. to Dismiss.) Kalt moved to dismiss Plaintiff's contributory and vicarious infringement claims—Counts IV and V—pursuant to Federal Rule of Civil Procedure 12(b)(6). (R. 93, Kalt's Mot. to Dismiss.)[1] For the following reasons, the Court denies Kalt's motion to dismiss and grants Blair's motion to dismiss with prejudice.

---

[1] Defendant Blair has also filed a Counterclaim against Plaintiff UIRC and third-party defendant Urban Investment Research Corporation and a third-party complaint against Rainer Realty Acquisitions GP and Rainer GSA Portfolio I. The defendants in both those complaints have moved to dismiss certain counts. The Court will address those motions in a separate opinion.

**BACKGROUND**

Plaintiff is a Delaware Limited Liability Company located in Chicago, Illinois that is in the business of acquiring and operating properties leased to the U.S. General Services Administration ("GSA") to be financed by the sale of bonds through its subsidiaries. (R. 89, Fourth Am. Compl. ¶ 2.) Defendant Blair is a Delaware Limited Liability Company registered to do business in Illinois and with an office in Illinois. (*Id*. ¶ 3.) Blair was Plaintiff's investment banker and placement agent in connection with Plaintiff's bond offering, the proceeds of which it used to acquire a portfolio of real estate properties. (*Id*. ¶ 6.) Kalt is an Illinois citizen and served as Plaintiff's relationship manager at Blair. (*Id*. ¶¶ 4, 35.)

Plaintiff alleges that in order to successfully market a bond portfolio to provide the funds to acquire properties leased to the GSA, Plaintiff created and used a series of documents, including a Preliminary Private Placement Memorandum ("PPPM IV"), a Final Private Placement Memorandum ("FPPM IV"), and an Indenture of Trust ("Indenture IV"). (*Id*. ¶¶ 9, 18, 26.) Plaintiff provided the PPPM IV, FPPM IV, and Indenture IV to Defendant, and Defendant distributed it to potential investors to market the proposed bond offering. (*Id*. ¶ 10, 19, 27.) Plaintiff, in compliance with the relevant copyright laws, secured the exclusive rights and privileges to the copyright for the PPPM IV, FPPM IV, and Indenture IV. (*Id*. ¶ 10, 21, 29.) As a result, on July 21, 2015, the U.S. Copyright Office issued to Plaintiff U.S. Copyright Reg. No. TX 8-069-779 ("'799 Reg.") entitled Preliminary Private Placement Memorandum, which includes additional and revised text to the memorandum. (*Id*. ¶ 11.) The Copyright Office issued to Plaintiff similar copyrights for FPPM IV and Indenture IV entitled Final Private Placement Memorandum (Copyright Reg. No. TX 8-107-571) and Indenture of Trust (Copyright Reg. No. TX 8-107-552), both of which included additional and revised text. (*Id*. ¶¶ 20, 28.)

Plaintiff alleges that it is the owner of all rights, title, and interest in and to the copyrights for PPPM IV, FPPM IV, and Indenture IV. (*Id.* ¶¶ 12, 21, 29.)

Plaintiff alleges that Defendants, with full knowledge of Plaintiff's rights, willfully infringed on Plaintiff's copyright by copying original portions of Plaintiff's copyrighted work for use in a Confidential Placement Memorandum ("CPM") in relation to a bond offering issued by Rainer GSA Portfolio I ("Rainer") on July 1, 2015. (*Id.* ¶¶ 13-14, 22, 30.) Specifically, Plaintiff alleges that Defendant copied almost verbatim both protected and non-protected expression of Plaintiff's Indenture IV in the Indenture of Trust that Blair assisted Rainer in drafting for marketing bonds Rainer used to acquire GSA leased properties. (*Id.* ¶ 31.) Plaintiff claims that Defendants also distributed the infringing CPM and Indenture of Trust to potential investors in Rainer's bond offering. (*Id.* ¶¶ 15, 23, 32.)

Plaintiff further alleges that Defendant Kalt was the relationship manager for both Plaintiff's bond offering and Rainer's offering, and engaged in conduct that encouraged or assisted Blair's copyright infringement of PPPM IV, FPPM IV, and Indenture IV. (*Id.* ¶ 36.) Specifically, Plaintiff alleges that Kalt directed or supervised Blair's use of Plaintiff's copyrighted PPPM IV, FPPM IV, and Indenture IV as a marketing tool with which to solicit clients and potential clients, including Rainier, to retain Blair as an investment banker. (*Id.* ¶ 37.) According to Plaintiff, Kalt actively encouraged Blair's infringement by directing Blair employees and Blair's outside counsel to use Plaintiff's copyrighted documents as the "standard" form for similar transactions, including Rainer's bond offering documents. (*Id.* ¶ 38.) Plaintiff also claims that Kalt personally directed and supervised the creation of the infringing materials by Blair's employees and outside attorneys and provided input on particular provisions in the materials. (*Id.* ¶ 39.) Plaintiff alleges that Kalt had control over the distribution and use of the

infringing materials and personally circulated the infringing documents to parties interested in the Rainer transaction. (*Id.* ¶¶ 40, 45.) Plaintiff also alleges that, as relationship manager for both Defendant's and Rainer's bond offerings, Kalt had a direct and substantial financial interest in the alleged infringing activity. (*Id.* ¶ 44.) Specifically, Plaintiff alleges that Kalt received a bonus as a direct result of the work Blair did on the Rainer transactions, which was substantially facilitated by the infringement of Plaintiff's materials. (*Id.* ¶ 48.)

## LEGAL STANDARD

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732, 736 (7th Cir. 2014). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). In determining the sufficiency of a complaint under the plausibility standard, courts must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiffs' favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016). In ruling on a Rule 12(b)(6) motion, district courts may also consider documents attached to the pleadings without converting the motion into a motion for summary judgment, as long as the documents are referred to in the complaint and

central to the claims. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Indiana*, 786 F.3d 510, 528 n. 8 (7th Cir. 2015).

## ANALYSIS

**I. Counts IV and V—Contributory and Vicarious Infringement Against Michael Kalt**

In Counts IV and V, Plaintiff alleges that Kalt should be held personally liable for contributory and vicarious infringement because he is a partner at Blair and as Plaintiff's relationship manager, he personally supervised and engaged in the infringing activity at issue here. The Court previously dismissed Plaintiff's vicarious and contributory infringement claims in its Third Amended Complaint against Kalt because the conclusory allegations failed to state a plausible claim for relief, and Kalt argues that Plaintiff's new allegations in its Fourth Amended Complaint still fail to make a "special showing" that Kalt was the "moving force" behind the infringement. (R. 93, Def. Kalt's Mem. in Supp. of his Mot. to Dismiss 5.)

The Supreme Court has held that "[o]ne infringes contributorily by intentionally inducing or encouraging direct infringement . . . and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930–31 (2005) (citations omitted). Specifically, to sustain a claim for contributory copyright infringement, the plaintiff must prove the defendant engaged in "personal conduct that encourage[d] or assist[ed] the infringement." *Flava Works, Inc. v. Gunter*, 689 F.3d 754, 757 (7th Cir. 2012). To sustain a claim for vicarious copyright infringement, the plaintiff must prove that "the defendant: (1) at all material times possessed the right and ability to supervise the infringing activity; and (2) has a direct financial interest in the infringer's activity." *Frerck v. John Wiley & Sons, Inc.*, No. 11-CV-2727, 2014 WL 3512991, at *9 (N.D. Ill. July 14, 2014). Additionally, as the parties agree, the seminal Seventh Circuit case

of *Dangler v. Imperial Mach. Co.*, 11 F.2d 945 (7th Cir. 1926), still provides the governing law regarding whether corporate officers can be held personally liable for their corporation's infringement. In *Dangler*, the court explained:

> In the absence of some special showing, the managing officers of a corporation are not liable for the infringements of such corporation, though committed under their general direction. . . It is when the officer acts willfully and knowingly— that is, when he personally participates in the manufacture or sale of the infringing article (acts other than as an officer), or when he uses the corporation as an instrument to carry out his own willful and deliberate infringements, or when he knowingly uses an irresponsible corporation with the purpose of avoiding personal liability— that officers are held jointly with the company.

*Id.* at 947.

Here, Plaintiff's new allegations are sufficient to support its vicarious and contributory infringement claims at this stage under both *Dangler* and the specific standards for contributory and vicarious liability. Plaintiff has alleged that Kalt personally circulated the infringing materials and actively encouraged and personally directed Blair employees and Blair's outside counsel to use the infringing materials to solicit other clients, including Rainer, in part because Kalt had a direct financial interest in acquiring these new clients. (Fourth Am. Compl. ¶¶ 37-40, 48.) These allegations meet the *Dangler* standard because they sufficiently allege that Kalt acted "willfully and knowingly" and that he "personally participated in the manufacture or sale" of the infringing materials. *Dangler*, 11 F.2d at 947.[2] Therefore, under *Dangler*, viewing the allegations in the light most favorable to Plaintiff, Plaintiff has sufficiently stated personal infringement claims against Kalt pursuant to Rule 8(a). *See Syscon, Inc. v. Vehicle Valuation*

---

[2] As Plaintiff notes in its Response, the *Dangler* requirements are disjunctive. A plaintiff need only show that a corporate officer "personally participate[d] in the manufacture or sale of the infringing article" *or* "use[d] the corporation as an instrument to carry out his own willful and deliberate infringements," *or* "use[d] an irresponsible corporation with the purpose of avoiding personal liability." *Dangler*, 11 F.2d at 947 (emphasis added). Here, Plaintiff has made the first showing and need not make a showing of the other *Dangler* requirements.

6

*Servs., Inc.*, 274 F. Supp. 2d 975, 977 (N.D. Ill. 2003) (denying motion to dismiss personal infringement claim because plaintiff "alleged a level of personal participation in the allegedly infringing activities," thus meeting the *Dangler* standard).

Kalt argues, without citing any case law other than *Dangler*, that Plaintiff's allegations fail because Plaintiff does not allege that Kalt is an "officer" of Blair. (R. 93, Kalt's Mot. to Dismiss 5-6.) Kalt has not identified any cases in which a court dismissed individual infringement claims solely because the plaintiff failed to allege that the individual defendant was an officer. While *Dangler* is typically invoked when a plaintiff attempts to hold a corporate officer personally liable for his or her corporation's infringement solely due to his or her role as an officer and not because of any personal involvement in the infringement, where an employee with supervisory power personally directs and participates in infringing activity, courts will allow individual infringement claims to stand, even if the plaintiff did not specifically allege that the defendant was a corporate officer. *See, e.g.*, *Desmond v. Chicago Boxed Beef Distributors, Inc.*, 921 F. Supp. 2d 872, 886 (N.D. Ill. 2013) (noting that there is no requirement that employee must be an officer to be held liable as a contributory infringer and denying motion to dismiss); *Nordstrom Consulting, Inc. v. M & S Techs., Inc.*, No. 06 C 3234, 2006 WL 2931677, at *2 (N.D. Ill. Oct. 12, 2006) (denying motion to dismiss with regard to individual non-officer defendant because he personally participated in infringing activity); *Do It Best Corp. v. Passport Software, Inc.*, No. 01 C 7674, 2004 WL 1660814, at *15 (N.D. Ill. July 23, 2004) (denying motion to dismiss under *Dangler* where individual defendant was not an officer because he personally participated in infringement and noting that the case law does not suggest "that one *must be* an officer in order to be held liable as a contributory infringer.") (emphasis in original). Here, Plaintiff has alleged that Kalt is a Managing Director of Blair, that he personally

participated in and directed the infringing activity, and that he personally profited from the use of the infringing materials with other clients. Regardless of whether Kalt's formal title is "officer," these allegations, like those in *Desmond*, *Do It Best*, and *Nordstrom*, are sufficient to support a claim for personal copyright infringement.

Kalt also argues that Plaintiff's personal infringement claim fails because Plaintiff has failed to allege that Kalt "act[ed] other than as an officer" or outside the scope of his duties as an investment banker at Blair. *Dangler*, 11 F.2d at 947. Again, Kalt's argument fails to recognize that *Dangler's* rule protects corporate officers from liability for merely taking high-level actions necessary to operate the corporation, but that were removed from day-to-day activities and were not related to any infringing activity. *See Powder Power Tool Corp. v. Powder Actuated Tool Co.,* 230 F.2d 409 (7th Cir. 1956) (individual defendant was president of company but merely provided capital for formation and acted in advisory role and was not liable because he "did nothing beyond the scope of his duties as president of the [] company."). Indeed, courts in this district have rejected the argument that "even if an officer personally participates in the manufacture or infringement, such acts cannot lead to liability unless they fall outside of the officer's job description." *C.S.B. Commodities, Inc. v. Urban Trend (HK) Ltd.*, 626 F. Supp. 2d 837, 859 (N.D. Ill. 2009). In *C.S.B. Commodities*, the court rejected the argument that the plaintiff needed to allege actions taken outside the scope of the individual defendant's employment because the plaintiff sufficiently alleged that the individual defendant had a personal and active involvement in the "manufacture or sale of the infringing product, and thus was not simply acting as an officer of his company." *Id.* at 860. *See also Nordstrom*, 2006 WL 2931677 (individual defendant was president but also allegedly took active role in infringing activities); *Do It Best*, 2004 WL 1660814 (corporate counsel allegedly knew about, directed and

participated in acts that furthered infringement sufficient). Here, as discussed above, Plaintiff has alleged that Kalt was personally involved in the infringing activity. These allegations support its individual infringement claims.

Plaintiff's new allegations are also sufficient under the specific standards for contributory and vicarious liability. With regard to vicarious infringement, Plaintiff now alleges that Kalt supervised the alleged infringing activity and had a direct financial interest in and received a personal financial benefit from the infringing activity—specifically, that he received a bonus as a direct result of the work he did on the Rainer transactions, which used the infringing materials. (Fourth Am. Compl. ¶ 48.) At the pleading stage, these allegations meet the vicarious liability standards. *Seals v. Compendia Media Grp.*, 290 F. Supp. 2d 947, 954 (N.D. Ill. 2003) (noting that plaintiff might not be able to demonstrate at trial the direct benefit received by individual defendant, but denying motion to dismiss because plaintiff sufficiently alleged that profits from infringing activity were passed through to defendants).

Plaintiff's allegations are also sufficient with regard to contributory infringement because Plaintiff has alleged specific details about how Kalt encouraged and assisted the infringement. Specifically, Plaintiff now alleges that Kalt personally supervised the creation of the infringing materials and had consistent input during the drafting process. (Fourth Am. Compl. ¶ 39.) Plaintiff also alleges that Kalt directed or supervised Blair's use of the infringing materials, which he knew were created for Plaintiff's bond offering, in efforts to solicit clients to retain Blair and Kalt as an investment banker for other offerings and that Kalt personally circulated the infringing materials to potential clients. (*Id.* ¶¶ 37-38, 40.) Again, at the pleading stage, these allegations are sufficient to meet the contributory liability standards. *Smith v. Mikki More, LLC*, 21 F. Supp. 3d 276, 282 (S.D.N.Y. 2014) (denying motion to dismiss contributory infringement

9

claim because plaintiff sufficiently alleged that defendant was "active participant" in infringing activity).

In sum, accepting all well-pleaded facts as true and drawing reasonable inferences in the Plaintiff's favor, Plaintiff's new allegations plausibly state a claim, at least at the pleading stage, for contributory and vicarious infringement. Accordingly, the Court denies Kalt's motion to dismiss Plaintiff's contributory and vicarious infringement claims against him.

## II. Count VI—Professional Negligence

In Count VI, Plaintiff alleges that Defendants breached their duty of care to Plaintiff by using Plaintiff's copyrighted materials to benefit themselves and other clients and harmed Plaintiff's interests in doing so. In its Motion to Dismiss, Blair argues that the Court should dismiss Count VI for two reasons: (1) because Illinois courts do not recognize professional negligence claims against investment bankers, and (2) the federal Copyright Act preempts the professional negligence claims in this case. The Court addresses the preemption argument first because it is dispositive.

Blair argues that the federal Copyright Act preempts Plaintiff's professional negligence claim because that claim is functionally equivalent to its copyright claims and involves alleged conduct that falls completely under the protections of the Copyright Act. Plaintiff contends that its professional negligence claim is not preempted because it requires additional elements that qualitatively differ from the elements necessary to prove copyright infringement.

The Federal Copyright Act preempts state causes of actions that are equivalent to copyright infringement claims. 17 U.S.C. § 301(a). The Seventh Circuit, interpreting § 301(a), developed a two-prong test to determine preemption. *Balt. Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 674 (7th Cir. 1986). First, a court must determine that

the work in which the right is asserted is "fixed in tangible form and comes within the subject matter of copyright as specified in [federal copyright law] § 102." *Id.* Second, the rights granted under state law must be equivalent to the exclusive rights established by federal copyright law in § 106. *Id.* "A state right is 'equivalent' to the rights established by federal copyright law if it is violated by the exercise of any of the rights set forth in § 106, which includes the right to reproduce (whether in original or derivative form), distribute, perform and display the copyrighted material." *Higher Gear Grp., Inc. v. Rockenbach Chevrolet Sales, Inc.*, 223 F. Supp. 2d 953, 956–57 (N.D. Ill. 2002) (citing *Balt. Orioles*, 805 F.2d at 676–77). Additionally, a state right may be 'equivalent' if it requires additional elements to make out a cause of action, but the additional elements do not differ in kind from those necessary for copyright infringement. *Id.* at 957 (citing *Balt. Orioles*, 805 F.2d at 678.)

The first prong of the preemption analysis is satisfied here because Plaintiff's state law professional negligence claim asserts rights in the PPPM IV, FPPM IV, and Indenture IV, which, as Plaintiff itself argued in previous briefing, fall within the general subject matter protected under federal copyright law. The Seventh Circuit has held that "[a]s long as a work fits within one of the general subject matter categories of section 102 and 103, . . . [section 301(a) ] prevents the States from protecting it even if it fails to achieve Federal copyright because it is too minimal or lacking in originality to qualify." *Balt. Orioles*, 805 F.2d at 676 (citing House Report at 131, *reprinted in* 1976 U.S. Code Cong. & Ad. News at 5747). Here, regardless of whether the works at issue ultimately embody creative expression, Plaintiff's allegations asserted that the PPPM IV, FPPM IV, and Indenture IV are original works of authorship that are fixed in tangible form and thus fall within the general subject matter categories protected under the Copyright

11

Act. 17 U.S.C.A. § 102 ("Copyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression.")

The Court's preemption analysis thus turns on whether the rights granted under Plaintiff's professional negligence claim are equivalent to the exclusive rights established by federal copyright law. In its professional negligence claim, Plaintiff alleges that Defendants[3] had a duty of care as Plaintiff's investment banker to act in Plaintiff's best interest and refrain from taking any action that would harm Plaintiff's interest and Defendants breached that duty by using the alleged infringing materials to their own benefit and to Plaintiff's harm. While the parties did not identify any case law analyzing copyright preemption of professional negligence claims, courts analyzing copyright preemption in the context of claims regarding a similar duty of care or negligence have found that such claims were preempted where the duty of care or negligence claims are based entirely on the underlying copyright infringement.

In *Gary Friedrich Enterprises, LLC v. Marvel Enterprises, Inc.*, 713 F. Supp. 2d 215, 227–28 (S.D.N.Y. 2010), for example, the court considered whether copyright law preempted the plaintiff's negligence claim, in which the plaintiff alleged that the defendant breached the duty of care it owed to the plaintiff by infringing on the plaintiff's intellectual property. The Court found that copyright law preempted the plaintiff's negligence claim because the negligence claim essentially "restate the plaintiff's copyright infringement claim" and failed to "assert an 'extra element' beyond the rights protected by federal copyright." *Id. See also Marvullo v. Gruner &*

---

[3] In its opposition brief, Plaintiff acknowledges that its professional negligence claim, Count VI, is ambiguous as to whether both Kalt is a party as well as Blair and propose to amend the claim to more clearly include Kalt should the Court deny Blair's motion to dismiss. As discussed more fully below, however, Plaintiff's proposed amendment is moot because federal copyright law preempts Plaintiff's professional negligence claim against both Blair and Kalt.

*Jahr AG & Co.,* No. 98 Civ. 5000, 2001 WL 40772, at *7 (S.D.N.Y. Jan. 17, 2001) (finding same).

Similarly, in *Dielsi v. Falk*, 916 F. Supp. 985, 992-93 (C.D. Cal. 1996), in addition to alleging copyright infringement, the plaintiff brought a negligence claim alleging that the defendant negligently failed to compensate the plaintiff for the use of his script. The Court found that copyright law preempted the plaintiff's negligence claim because the "claim merely re-characterizes a copyright infringement claim as one for negligence." *Id.* The Court explained that "[b]ecause the essential allegation is still that [the] Defendants unlawfully copied [the] Plaintiff's ideas, it is still a copyright infringement claim," and noted that although the plaintiff claimed the negligence claim involved an additional element involving the defendant's mental state, that purported element did not make the claim qualitatively different from the copyright infringement claim. *Id. See also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1190–91 (C.D. Cal. 2001), *aff'd in part, dismissed in part,* 90 F. App'x 496 (9th Cir. 2003) (finding claim of breach of implied promises claim was preempted because it "depends on the same conduct which underpins their copyright claims"); *Bridgeport Music, Inc. v. 11C Music*, 154 F. Supp. 2d 1330, 1335 (M.D. Tenn. 2001) (preempting negligence claim because it "simply echoes the copyright claims Plaintiffs have asserted elsewhere, arguing in essence that the Defendants had a "duty" to avoid infringing and that they "breached" that duty by, in fact, infringing."); *Watermark Publishers v. High Tech. Sys.*, No. 95-3839-IEG, 1997 U.S. Dist. LEXIS 22512, at *15 (S.D. Cal. June 18, 1997) (preempting a negligence claim because any duty to protect another from copyright infringement came from protection of copyright law).

Here, Plaintiff attempts to differentiate its professional negligence claim from its copyright claims by emphasizing that its professional negligence claim requires the extra element

13

of a breach of a duty of care, which is not required by its copyright claims. Like in the case law cited above, however, where the plaintiffs attempted to reframe copyright claims as negligence claims based on a breached duty of care, here, Plaintiff's professional negligence allegations "merely re-characterize [its] copyright infringement claim as one for negligence." *Dielsi*, 916 F. Supp. at 992-93. Plaintiff's essential allegations in this professional negligence claim—that Defendants used Plaintiff's copyrighted materials to benefit themselves and their clients and at Plaintiff's expense—are copyright infringement claims that are protected under the federal Copyright Act. As the court stated in *Bridgeport Music*, 154 F. Supp. 2d at 1335, Plaintiff's professional negligence claim "simply echoes the copyright claims Plaintiff[] ha[s] asserted elsewhere, arguing in essence that the Defendants had a "duty" to avoid infringing and that they "breached" that duty by, in fact, infringing." Plaintiff's asserted state right is thus not qualitatively different than and is equivalent to its copyright claims, and accordingly, federal copyright law preempts its professional negligence claim.

Plaintiff's reliance on *Higher Gear Group*, 223 F. Supp. 2d at 957-58, which it mentions only briefly in a one sentence parenthetical, is unpersuasive. In *Higher Gear Group*, the court found that copyright law did not preempt the plaintiff's trade secret misappropriation claim because the misappropriation claim was based on trade secrets that the defendant obtained via a licensing agreement which the defendant disclosed to a competitor despite promising not to share the trade secrets in the licensing agreement. *Id.* Thus, unlike here, where Plaintiff's professional negligence claim essentially re-states its copyright claims without any qualitative differences, in *Higher Gear Group*, the plaintiff's misappropriation claim was based on specific trade secrets and a duty of confidentiality conferred upon the defendant in a written agreement. The claim thus had substantive elements unrelated to whether the material was subject to copyright and

14

whether the defendant infringed upon that copyright. The holding in *Higher Gear Group* is thus not applicable here.

Accordingly, the Court grants Blair's motion to dismiss Plaintiff's professional negligence claim because federal copyright law preempts that claim.[4] The Court dismisses Plaintiff's professional negligence claim with prejudice because Plaintiff's allegations still fail despite multiple opportunities to plead a viable claim. *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 347–48 (7th Cir. 2012) (leave to amend not granted when party has had multiple opportunities to amend and has failed to cure a defective claim).

## CONCLUSION

For these reasons, the Court denies Kalt's motion to dismiss Plaintiff's contributory and vicarious infringement claims and grants Blair's motion to dismiss Plaintiff's professional negligence claim with prejudice.

**Dated:** August 21, 2017

**ENTERED**

*[signature]*

**AMY J. ST. EVE**
**United States District Court Judge**

---

[4] Because the Court finds that copyright law preempts Plaintiff's professional negligence claim, it need not address the parties' arguments about whether a professional negligence claim against an investment bank exists under Illinois law.

15