**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UIRC-GSA Holdings Inc., <br>     Plaintiff, <br><br> v. <br><br> William Blair & Company, L.L.C., <br> And Michael Kalt, <br>     Defendants, <br>_____ <br> William Blair & Company, L.L.C., <br>     Counter-Plaintiff, <br><br> v. <br><br> UIRC-GSA Holdings, Inc. and <br> Urban Investment Research Corp., <br>     Counter-Defendants, <br>_____ <br> William Blair & Company, L.L.C., <br>     Third-Party Plaintiff, <br><br> v. <br><br> Rainier Realty Acquisition Gp., L.L.C., and <br> Rainier GSA Portfolio I, L.L.C., <br>     Third-Party Defendants. | Case No. 15-CV-9518 <br><br> Hon. Amy J. St. Eve |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On April 12, 2016, Plaintiff UIRC-GSA Holdings, Inc. ("UIRC") brought its Fourth Amended Complaint against Defendants William Blair & Company ("Blair") and Michael Kalt, collectively, "Defendants," alleging copyright infringement in violation of 17 U.S.C. § 101 *et seq*. and professional negligence. Blair has since filed a third-party complaint against Rainer Realty Acquisition ("RRA") and Rainer GSA Portfolio ("Rainer GSA"), collectively, "Third-

1

Party Defendants" or "Rainier,"[1] alleging that Rainier has a duty to indemnify Blair against UIRC's claims in this litigation and a breach of contract claim. RRA moved to dismiss Blair's equitable indemnity (Count III) and contribution (Count IV) claims and Rainier collectively moved to dismiss Blair's remaining claims—Count I and Count II—all pursuant to Rule 12(b)(6). For the following reasons, the Court grants Rainier's motion to dismiss.

## BACKGROUND

Blair was UIRC's investment banker and placement agent in connection with Plaintiff's bond offering, the proceeds of which were used to acquire a portfolio of real estate properties. (R. 89, Fourth Am. Compl. ¶ 6.) This case arises from Blair's alleged copyright infringement of UIRC's bond documents and use of those documents to solicit other clients, including Rainier. (*Id.* ¶¶ 13-16.) In considering this motion, the Court presumes familiarity with the background of this action as set forth in the Court's previous orders and does not recite a detailed background here. The Court will, however, provide a brief factual background, particularly as it pertains to the new allegations in Blair's Counterclaim and Third-Party Complaint.

RRA is a Texas specialty real estate investment company that provides preferred equity, mezzanine, and mortgage debt to quality commercial properties in growth markets throughout the United States, and specifically it is in the business of acquiring and operating GSA buildings, some of which are financed through the sale of GSA revenue bonds. (Third-Party Compl. ¶ 2.) On or about February 5, 2015, Blair entered into an engagement letter agreement with RRA to render financial advisory and investment banking services (the "Rainier Engagement Letter"). (*Id.* ¶ 7.) Under the Rainier Engagement Agreement, Blair was tasked with assisting RRA with

---

[1] In its Third-Party Complaint, Blair refers to RRA and Rainier GSA as "Rainier" without distinction between the two entities. Rainier GSA and RRA are in fact different corporate entities, and accordingly, when the Court refers to RRA or Rainier GSA in this opinion, it is referring to that specific entity, and when it refers to Rainier, it is referring to the two entities collectively.

the issuance of GSA revenue bonds for the acquisition of a portfolio of properties leased to the GSA. (*Id.* ¶ 8.) Blair was required to assist in the preparation of any solicitation materials, the private placement memorandum used for the deal, and other offering materials. (*Id.*) In the Agreement, RRA acknowledged that "Blair is not and will not be construed as a fiduciary of [RRA] and will have no duties or liability to . . . [RRA] . . . by virtue of this agreement, and the retention of Blair hereunder, all of which duties and liabilities are hereby expressly waived." (*Id.* ¶ 9.) RRA also agreed to rely on its own counsel and advisors for "legal, accounting, tax, and similar advice." (*Id.*) Blair alleges that RRA understood and agreed that it was solely responsible for the documents prepared in connection with its own GSA revenue bond offering and that Blair was not offering RRA legal advice under the Agreement. (*Id.* ¶ 10.)

On or about January 30, 2015, Blair and RRA separately entered into an indemnity agreement (the "Rainier Indemnity Agreement"), which they incorporated by reference into the Rainier Engagement Agreement. (*Id.* ¶ 11.) In the Indemnity Agreement, RRA agreed to indemnify and hold harmless Blair "from and against any and all losses, claims, damages, or liabilities (collectively, 'Losses') and reasonable expenses incurred by them (including all fees and expenses of Blair's . . . incurred at [RRA's] request or otherwise incurred and reasonably required in connection with the investigation of any pending or threatened claims or preparation for any pending or threatened litigation or other proceedings) . . . arising out of or relating to Blair's engagement under such letter agreement." (*Id.* ¶ 12.) The Indemnity Agreement also states that RRA "will not, without the prior written consent of Blair, settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which indemnification may be sought hereunder . . . unless such settlement . . . includes an unconditional release of Blair . . . from all liability arising out of such

claim, action, suit, or proceeding." (*Id.* ¶ 13.) The Indemnity Agreement also indemnifies "Other Identified Parties" including "the respective members, principals, partners, directors, officers, and employees of Blair and its affiliates." (*Id.* ¶ 14.) In connection with Blair's engagement with RRA, Blair worked with RRA and counsel on certain deal documents governing the creation and issuance of GSA revenue bonds on behalf of RRA. (*Id.* ¶ 15.)

Blair also separately represented UIRC on unrelated deals and worked with UIRC on placement memoranda relating to the creation and issuance of revenue bonds relating to different GSA properties. (*Id.* ¶ 16.) UIRC filed a copyright infringement lawsuit against Rainier GSA and served a subpoena on Blair seeking certain documents, and, after responding to the subpoena, Blair sent a letter to RRA's counsel notifying RRA of its costs and expenses incurred in relation to the subpoena and reserving the right to seek reimbursement pursuant to the Rainier Indemnity Agreement. (*Id.* ¶¶ 16-20.) Blair did not receive a response from RRA. (*Id.*) On October 11, 2016, UIRC settled with Rainier GSA, but Blair never received any notice from RRA of the settlement as required by the Indemnity Agreement, nor did RRA request Blair's consent to settle the underlying action with UIRC or obtain an unconditional release from UIRC of Blair relating to any claims in this case. (*Id.* ¶¶ 21-22.) Also on October 11, 2016, UIRC filed an amended complaint against Blair and Kalt, relating to their work on the RRA engagement. (*Id.* ¶ 24.) On November 4, 2016, Blair's counsel sent RRA a renewed demand for indemnification and defense and notified RRA of its breach of the Indemnity Agreement, but on December 13, 2016, RRA declined Blair's request for indemnification. (*Id.* ¶¶ 25-26.) Since the filing of the complaint against Blair, Blair has incurred significant legal costs and expenses defending itself against UIRC's claims, which arise from RRA's engagement. (*Id.* ¶ 28.)

4

As noted above, despite the corporate distinction between RRA and Rainier GSA, all Blair's claims in its Third-Party Complaint are against RRA and Rainier GSA collectively, which Blair refers to as "Rainier."  In Count I, Blair claims that Rainier, collectively, has a contractual duty indemnify Blair pursuant to the Rainier Engagement Agreement.  In Count II, Blair claims that Rainier, collectively, breached the Rainier Engagement Agreement by failing to defend and indemnify Blair in the UIRC litigation and by settling with UIRC without written consent from Blair.  In Count III, Blair claims that, due to Rainier's agency relationship with Blair, Rainier, collectively, has a common law duty to indemnify Blair for any liability resulting from Rainier's own acts, omissions, and/or negligence arising out of the UIRC litigation.  In Count IV, Blair claims that the damages alleged in UIRC's complaint are the result of Rainier's acts, omissions, and/or negligence, and accordingly, if Blair or Kalt are found liable in any way, Blair is entitled to a contribution from Rainier, collectively for those damages and for its legal fees and expenses pursuant to the common law principles of contribution.

## LEGAL STANDARD

"Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a complaint for failure to state a claim upon which relief can be granted."  *Hill v. Serv. Employees Int'l Union*, 850 F.3d 861, 863 (7th Cir. 2017).  Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests."  *Bell Atlantic v. Twombly,* 550 U.S. 544, 555 (2007) (citation omitted).  Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level."  *Twombly,* 550 U.S. at 555.  Put differently, a "complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). In determining the sufficiency of a complaint under the plausibility standard, courts must "accept as true all of the well-pleaded facts in the complaint and draw reasonable inferences in favor of [the] plaintiffs." *Hill*, 850 F.3d at 863; *see also Roberts v. City of Chi.*, 817 F.3d 561, 564 (7th Cir. 2016). In ruling on a Rule 12(b)(6) motion, district courts may also consider documents attached to the pleadings without converting the motion into a motion for summary judgment, as long as the documents are referred to in the complaint and central to the claims. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Indiana*, 786 F.3d 510, 528 n. 8 (7th Cir. 2015).

## ANALYSIS

Rainier GSA, alone, has moved to dismiss Counts I and II in Blair's Third-Party Complaint. RRA and Rainier GSA, collectively, have moved to dismiss Counts III and IV of Blair's Third-Party Complaint. The Court addresses each Count in turn.

### I. Counts I and II—Contractual Indemnity and Breach of Contract

In Count I, Blair claims that Rainier, collectively, has a contractual duty to indemnify Blair pursuant to the Rainier Engagement Agreement. In Count II, Blair claims that Rainier, collectively, breached the Rainier Engagement Agreement by failing to defend and indemnify Blair in the UIRC litigation and by settling with UIRC without written consent from Blair.

Rainier GSA[2] argues that only RRA and Blair were parties to the Rainier Engagement Agreement and Rainier GSA was not a party to that agreement, thus the Court should dismiss Blair's contractual (contractual indemnity and breach of contract) claims against Rainier GSA.

---

[2] Rainier GSA and RRA filed a motion to dismiss collectively, but their arguments in Counts I and II are on behalf of Rainier GSA only, so the Court refers to the Third-Party Defendants as Rainier GSA for purposes of these counts.

6

Blair concedes that only RRA—and not Rainier GSA—was a party to the Engagement Agreement, but argues, despite these allegations, that the Court should disregard the corporate distinction between Rainier GSA and RRA for purposes of the Agreement because Rainier GSA was created by RRA to serve as a subsidiary for the GSA revenue bond deals at issue in the Agreement. Blair also argues that the Agreement itself provides that RRA's subsidiaries were bound by the contract. (*See* R. 121, Rainier's Mot. to Dismiss, Ex. B Rainier Engagement Agreement 2 ("If all or any portion of the business of the [RRA] is engaged in through subsidiaries or other affiliates, the references in this paragraph to [RRA] will, when appropriate, be deemed also to include such subsidiaries or other affiliates.")) Rainer GSA responds that the Court should not disregard the corporate distinction between Rainier GSA and RRA for purposes of this contract because RRA and Rainier GSA are distinct entities, and Blair has not sufficiently plead facts to warrant piercing the corporate veil.

Despite Blair's arguments, the Engagement Agreement does not, by its plain language, provide that the indemnity provision applies to RRA's subsidiaries.[3] The provision upon which Blair relies states that the references and provisions of one specific paragraph apply to RRA's subsidiaries, not the agreement as a whole or the indemnity provision. (*See* Rainier Engagement Agreement 2 ("the references *in this paragraph* to [RRA] will, when appropriate, be deemed also to include such subsidiaries or other affiliates.") (emphasis added)) That particular paragraph

---

[3] Although a court when ruling on a Rule 12(b)(6) motion is limited to a consideration of the pleadings, "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *Yassan v. J.P. Morgan Chase & Co.*, 708 F.3d 963, 975 (7th Cir. 2013) (internal quotations omitted). Here, Rainier has attached the Indemnity Agreement and the Engagement Agreement to its Motion to Dismiss, these documents are referred to extensively in Blair's Third-Party Complaint, and they are central to Blair's claims, so the Court may consider these documents.

7

does not include or reference an indemnity provision, and accordingly, the Agreement does not, by its language, apply to RRA's subsidiaries.

The Court's inquiry must then focus on whether Blair has pleaded sufficient facts to disregard Rainier GSA's corporate form and show that Rainer GSA is an alter ego of RRA. In Illinois,[4] courts will pierce the corporate veil when (1) "there is such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist" and (2) "adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Judson Atkinson Candies, Inc. v. Latini–Hohberger Dhimantec,* 529 F.3d 371, 379 (7th Cir. 2008) (internal quotation marks omitted). Piercing the corporate veil, however, "is a task which courts should undertake reluctantly." *Tower Inv'rs, LLC v. 111 E. Chestnut Consultants, Inc.*, 317 Ill. App. 3d 1019, 1033 (1st Dist. 2007) (citing *Pederson v. Paragon Pool Enterprises,* 214 Ill. App. 3d 815 (Ill. Ap. Ct. 1991); *see also Hornsby v. Hornsby's Stores, Inc.*, 734 F. Supp. 302, 307-08 (N.D. Ill. 1990) (explaining that exceptions to the rule providing that corporations have separate identities are "not favored and are stringently applied"). Notably, in a breach of contract case, piercing the corporate veil is even more difficult and courts often require "additional compelling facts," such as a finding of fraud. *Saletech, LLC v. E. Balt, Inc.*, 20 N.E.3d 796, 806 (1st Dist. 2014) (citations omitted); *see also Tower Investors*, 371 Ill. App.3d at 1034 (requiring "additional compelling facts); *RehabCare Grp. E., Inc. v. Certified Health Mgmt., Inc.*, No. 07 C 2923, 2007 WL 3334500, at *2 (N.D. Ill. Nov. 8, 2007) (noting it is "even more difficult" to pierce the corporate veil in a breach of contract case). "Where there is no evidence of any misrepresentation, no attempt to conceal any facts, and the parties possess a total understanding of all of the transactions involved, Illinois courts will not

---

[4] Both parties agree that Illinois law applies here.

pierce the corporate veil in a breach of contract situation." *Id.* (citing *Tower Investors,* 371 Ill. App.3d at 1034).

Several courts have granted motions to dismiss because the party seeking to disregard a party's corporate form failed to adequately plead the requirements for piercing the corporate veil. In *RehabCare*, WL 3334500, at *3, for example, the court dismissed a breach of contract claim premised upon the alter ego doctrine because the plaintiff's alter ego allegation, which stated that the defendants "operated without respect for corporate formalities," was too conclusory to withstand a motion to dismiss. The court also noted that the plaintiff had completely failed to allege that the defendants' corporate structure would sanction a fraud or injustice. *Id.* Similarly, in *Classic Fire & Marine Ins. Co. v. Illinois Ins. Exchange.,* No. 97 C 1256, 1997 WL 767290 (N.D. Ill. Dec. 3, 1997), the plaintiff asserted that two entities were "affiliate members of the same corporate group, and [we]re subject to common control and ownership." The court deemed the plaintiff's "conclusory" pleading to be insufficient with regard to the first requirement of the alter ego test. *Id.* at *5; *see also Hornsby,* 734 F. Supp. at 307-08 (mere allegation that corporations shared office space, office staff and directors is insufficient to suggest fraud or injustice or that one corporation was the alter ego of another); *Trustees of Cement Masons Fund, Local 502 v. F & V Cement Contractors,* No. 02 C 3979, 2004 WL 765368, at *3 (N.D. Ill. April 7, 2004), (dismissing because "barebones, conclusory allegation . . . [was] insufficient to state an alter ego claim even under the liberal notice pleading requirements of Federal Rule of Civil Procedure 8(a)").

Here, Blair's Third-Party Complaint does not even contain conclusory allegations about Rainier's corporate structure—Blair has failed to allege anything about the separate structures of RRA and Rainier GSA. Blair also has failed to allege that Rainier's corporate structure would

promote fraud or injustice or that Rainier attempted to conceal facts or to misrepresent its corporate form. Accordingly, the Court grants Rainier GSA's motion to dismiss Blair's contractual claims against it without prejudice because Rainer GSA was not a party to the Engagement Agreement and because Blair has failed to allege alter ego liability.

## II.     Count III—Common Law Indemnity

In Count III, as an alternative to its claim for contractual indemnity, Blair claims that, due to Rainier's agency relationship with Blair, Rainier, collectively, has a common law duty to indemnify Blair for any liability resulting from Rainier's own acts, omissions, and/or negligence arising out of the UIRC litigation. Rainier (Rainer GSA and RRA together) responds that implied indemnity is only available in a quasi-contractual context and if premised on vicarious liability, which Blair has failed to plead. Rainier also argues that Blair's allegations do not contain sufficient detail about the qualitative differences between its conduct and Rainier's.[5]

Equitable or implied indemnity based on tort principles of relative blameworthiness no longer exists in Illinois. *Truck Components, Inc. v. K-H Corp.*, No. 94 C 50250, 1995 WL 692541, at *11 (N.D. Ill. Nov. 22, 1995) (citing *American Nat'l Bank and Trust Co. v. Columbus–Cuneo–Cabrini Medical Ctr.*, 154 Ill. 2d 347 (1992)). Implied indemnity, however, is viable in the quasi-contractual context, but only if premised on vicarious liability. *Id.* at 288–89. "Implied indemnity generally rises where the parties have failed to include an indemnity provision in an agreement and there is reason for the court to read such a provision into the

---

[5] In its Reply Brief, Rainier GSA also argues that Rainier GSA is not subject to Blair's implied indemnity claim because it did not have a pre-tort relationship with Blair and did not in fact exist when RRA agreed to engage Blair. Rainier GSA, however, waived this argument by not including it in its opening brief in support of its motion to dismiss. *See, e.g.*, *United States ex rel. Graziosi v. Accretive Health, Inc.*, No. 13-CV-1194, 2017 WL 1079190, at *10 (N.D. Ill. Mar. 22, 2017) (argument waived when raised for first time in reply brief). Because Blair's allegations refer to Rainier as one entity and because Rainier GSA has waived its argument regarding corporate distinction for this Count, the Court refers to Rainier as one entity in this Count.

10

agreement." *Mizuho Corporate Bank v. Corey & Assoc., Inc.*, 341 F.3d 644, 652 (7th Cir. 2003) (citations omitted). "To establish [an implied indemnity] claim, [a plaintiff] must allege a pre-tort relationship with [the defendant] and a qualitative difference in their conduct in the occurrence." *Canadian Pac. Ry. Co. v. Williams-Hayward Protective Coatings, Inc.*, No. 02 C 8800, 2004 WL 2108413, at *4 (N.D. Ill. Sept. 21, 2004) (citing *Frazer v. A.F. Munsterman, Inc.*, 123 Ill. 2d 245, 255 (1988)). Importantly, "implied indemnity actions lie only where one party is in some sense 'at fault,' and the other party is blameless though liable—typically because of strict liability, *respondeat superior,* implied warranty, or some other legal principle that imposed liability regardless of fault." *Mizuho*, 341 F.3d at 652 (citations omitted).

Here, Blair has alleged that it did not take any actions to infringe on UIRC's copyrights and any damages UIRC has claimed are the result of Rainier's "own acts, omission, and/or negligence." Blair also has alleged that Rainier, collectively, is liable to Blair due to the "agency relationship" between the parties. These conclusory allegations are insufficient to support a claim for equitable indemnity for several reasons. First, here, RRA and Blair had an indemnity provision in the Rainier Engagement Agreement, and Blair has identified no cases in which a court recognized an implied indemnity claim where the parties' contract already expressly provides for indemnity. Implied indemnity claims are appropriate where the "parties have failed to include an indemnity provision in an agreement and there is reason for the court to read such a provision into the agreement," *Mizuho*, 341 F.3d at 652, not where, as here, the parties have already negotiated and agreed to an indemnity provision. *See, e.g.*, *In re New Bern Riverfront Dev., LLC*, 516 B.R. 810, 827 (Bankr. E.D.N.C. 2014) (finding that it would be inappropriate to imply indemnity where the parties' contract already provides for indemnity because "indemnity

11

implied [ ] is not a backup plan, to which a [party] may resort when flawed contractual provisions overreach and are then curbed.")

Second, Blair's conclusory allegations fail to show that there is a "qualitative difference" between its conduct and Rainier's conduct. Blair merely alleges, in boilerplate fashion, that UIRC's claimed damages are the result of Rainier's conduct and not Blair's, but Blair's Complaint provides no details about Blair's conduct or Rainier's conduct in relation to the allegedly copyrighted documents. Blair does not allege which party drafted the documents, which party used the documents or how they used the documents, or any other details about the parties' involvement in the alleged infringing activity. *Devine v. Cyprus Indus. Minerals*, No. 90 C 1335, 1991 WL 76123, at *2 (N.D. Ill. May 3, 1991) (dismissing third-party implied indemnity claim in part because plaintiff failed to sufficiently allege qualitative distinction between parties' conduct); *Winfield Design Assocs., Inc. v. Quincy Jefferson Venture*, 569 F. Supp. 748, 749 (N.D. Ill. 1983) (dismissing implied indemnity claim because plaintiff's complaint alleged "no facts in support of its conclusory assertion" that there was a qualitative difference between the parties' conduct).

Lastly, Blair has also failed to allege vicarious liability. As noted above, implied indemnity is only available when it is premised on vicarious liability, and as such, courts will reject implied indemnity claims that are based entirely on conduct for which a party would be held directly liable (as opposed to merely vicariously liable due to the nature of the parties relationship). In *Louisiana Firefighters' Ret. Sys. v. N. Tr. Invs., N.A.*, No. 09 C 7203, 2012 WL 601861, at *3 (N.D. Ill. Feb. 23, 2012), for example, investment firms for pension funds brought a third-party complaint against the pension funds' board arguing that they were equally liable for the investment funds' losses at issue in the underlying lawsuit against the investment firms. The

12

court rejected the investment firms' implied indemnity claims because if the investment firms were found liable in the underlying litigation, it would be solely due to their own misconduct, not because of any vicarious relationship with the board. *Id.* The court reasoned that "[b]ecause they cannot be both blameless and liable, they have no claim for implied indemnity." *Id*. *See also Truck Components*, WL 692541, at *11 (rejecting implied indemnity claim because plaintiff claimed that third-party was "directly liable" for the damages at issue and thus failed to allege vicarious liability).

Accordingly, the Court dismisses Blair's common law indemnity claim without prejudice.

## III.  Count IV—Contribution

In Count IV, Blair claims that the damages alleged in UIRC's complaint are the result of Rainier's acts,[6] omissions, and/or negligence, and accordingly, if Blair or Kalt are found liable in any way, Blair is entitled to a contribution from Rainier for those damages and for its legal fees and expenses pursuant to the common law principles of contribution. Rainier argues that this claim fails because Blair has failed to plead that Blair and Rainier had a joint financial obligation to a third party created by an agreement or statute.

"In an action for common law contribution, the right to contribution arises due to the compulsory payment by a joint obligor of more than his share of a common obligation." *Flynn v. Levy*, 832 F. Supp. 2d 951, 955 (N.D. Ill. 2011) (citing *Ruggio v. Ditkowsky,* 147 Ill. App. 3d 638 (2d Dist. 1986). To recover under a theory of common law contribution, the co-obligor must demonstrate "that he has paid more than his just proportion of the joint indebtedness" as well as

---

[6] Because Blair's allegations refer to Rainier as one entity and because Rainier GSA does not make any arguments regarding the corporate distinction between RRA and Rainier GSA with respect to this Count, the Court refers to Rainier as one entity in this Count.

13

the amount of that excess. *Id.* In Illinois, the common law right to equitable contribution typically arises in the context of co-insurers, but several Illinois courts have found a right to equitable contribution outside of that context where the parties had a joint financial obligation to a third party created by agreement or statute. *See, e.g.*, *Roe v. Estate of Farrell*, 69 Ill. 2d 525, (1978) (joint tenancy); *Ruggio*, 147 Ill. App. 3d 638 (co-signed promissory notes); *Tembrina v. Simos*, 208 Ill. App. 3d 652 (1st Dist. 1991) (mortgage held by partnership where each partner was jointly and severally liable for payments); *Fletcher v. Marshall III*, 260 Ill. App. 3d 673 (2d Dist. 1994) (co-tenant on apartment lease); *Aardema v. Fitch*, 291 Ill. App. 3d 917 (1st Dist. 1997) (common corporate obligation); *see also Kudlicki v. MDMA, Inc.*, No. 05–02589, 2006 WL 1308617, at *4–5 (N.D. Ill. May 10, 2006).

Here, Blair's contribution claim fails. Blair does not cite to any case law, much less any case law in which parties successfully brought contribution claims in relation to copyright infringement lawsuits or in relation to work product an investment bank created for its client. More importantly, unlike co-signors on a promissory note, or parties to a mortgage agreement or apartment lease, where the parties have signed a written agreement holding them jointly liable for a financial obligation to a third party, here, Blair has merely alleged that the damages complained of by UIRC in the underlying litigation resulted from Rainier's acts, omissions, or negligence. Blair has failed to allege that Blair and Rainier had a joint obligation to UIRC created by agreement or statute, and several court have found similarly unsupported contribution allegations insufficient to state a claim. *See, e.g.*, *Louisiana Firefighters' Ret. Sys. v. N. Tr. Investments, N.A.*, No. 09 C 7203, 2012 WL 601861, at *4 (N.D. Ill. Feb. 23, 2012) (dismissing contribution counterclaim brought by defendant-investment advisor against pension system boards because "there is no statute or agreement that could create a joint obligation by the

14

[b]oards and defendants to plaintiffs."); *Flynn v. Levy*, 832 F. Supp. 2d 951, 958 (N.D. Ill. 2011) (dismissing contribution claim where plaintiff sought legal fees and payment for damages in underlying lawsuit because plaintiff failed to allege joint obligation created by agreement or statute and only requested money plaintiff believed defendants owed them); *Canadian Pac. Ry. Co. v. Williams-Hayward Protective Coatings, Inc.*, No. 02 C 8800, 2004 WL 2108413, at *3 (N.D. Ill. Sept. 21, 2004) (dismissing defendant's contribution claim because defendant failed to allege in counterclaim a joint obligation between it and third-party plaintiff).

Accordingly, the Court grants Rainier's motion to dismiss Blair's contribution claim without prejudice.

## CONCLUSION

For these reasons, the Court grants Rainier's motion to dismiss Blair's Third-Party Complaint without prejudice.

**Dated:** August 25, 2017

ENTERED

_____
**AMY J. ST. EVE**
**United States District Court Judge**