**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UIRC-GSA Holdings Inc., <br>     Plaintiff, <br><br> v. <br><br> William Blair & Company, L.L.C., <br> And Michael Kalt, <br>     Defendants, <br>_____ <br> William Blair & Company, L.L.C., <br>     Counter-Plaintiff, <br><br> v. <br><br> UIRC-GSA Holdings, Inc. and <br> Urban Investment Research Corp., <br>     Counter-Defendants, <br>_____ <br> William Blair & Company, L.L.C., <br>     Third-Party Plaintiff, <br><br> v. <br><br> Rainier Realty Acquisition Gp., L.L.C., and <br> Rainier GSA Portfolio I, L.L.C., <br>     Third-Party Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | <br><br><br><br><br><br><br><br><br><br>Case No. 15-CV-9518 <br><br>Hon. Amy J. St. Eve |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

On April 12, 2016, Plaintiff UIRC-GSA Holdings, Inc. ("UIRC") brought its Fourth Amended Complaint against Defendants William Blair & Company ("Blair") and Michael Kalt, collectively, "Defendants," alleging copyright infringement in violation of 17 U.S.C. § 101 *et seq.* and professional negligence. Blair has since filed Counterclaims against UIRC alleging that UIRC's copyrights are invalid, that UIRC owes Blair profits based on its ownership rights in the registered copyrights, breach of contract, contractual indemnity, and tortious interference. UIRC

1

moved to dismiss Blair's accounting profits (Count II), contractual indemnity (Count III), breach of contract (Count IV), and tortious interference (Count V) claims pursuant to Federal Rule of Civil Procedure 12(b)(6). (R. 117, UIRC's Mot. to Dismiss.)[1] For the following reasons, the Court grants UIRC's motion to dismiss Count II without prejudice, denies UIRC's motion to dismiss Count III, grants in part and denies in part UIRC's motion to dismiss Count IV, and denies UIRC's motion to dismiss Count V.

## BACKGROUND

UIRC is in the business of acquiring and operating properties leased to the U.S. General Services Administration ("GSA") to be financed by the sale of bonds through its subsidiaries. (R. 89, Fourth Am. Compl. ¶ 2.) Blair was UIRC's investment banker and placement agent in connection with Plaintiff's bond offering, the proceeds of which were used to acquire a portfolio of real estate properties. (*Id.* ¶ 6.) This case arises from Blair's alleged copyright infringement of UIRC's bond documents and use of those documents to solicit other clients, including Third-Party Defendants. (*Id.* ¶¶ 13-16.) In considering this motion, the Court presumes familiarity with the background of this action as set forth in the Court's previous orders and does not recite a detailed background here. The Court will, however, provide a brief factual background, particularly as it pertains to the new allegations in Blair's Counterclaims.

In its Counterclaims, Blair alleges that it regularly serves as an investment adviser to "household-name" clients in their efforts to raise capital, such as through the issuance of bonds, including the GSA revenue bonds at issue here. (R. 90, Counterclaim ¶ 7.) As part of its efforts to help UIRC raise funds through GSA revenue bonds, Blair and UIRC entered into an engagement agreement (the "UIRC Engagement Agreement") on January 20, 2014 to render

---

[1] The Court also has addressed Blair's Third-Party Claim against Rainier and Blair's Motion to Dismiss UIRC's Fourth Amended Complaint in separate opinions.

certain financial advisory and investment banking services. (*Id.* ¶ 8.) Under the UIRC Engagement Agreement, Blair was tasked with assisting UIRC with the issuance of GSA revenue bonds for the acquisition of a portfolio of properties leased to the GSA. (*Id.* ¶ 9.) Blair was required to assist in the preparation of any solicitation materials, the private placement memorandum used for the deal, and other offering materials. (*Id.*)

In the Agreement, UIRC acknowledged that "Blair is not and will not be constructed as a fiduciary of [UIRC] and will have no duties or liability to . . . [UIRC] . . . by virtue of this agreement, and the retention of Blair hereunder, all of which duties and liabilities are hereby expressly waived." (*Id.* ¶ 10.) UIRC also agreed to rely on its own counsel and advisors for "legal, accounting, tax, and similar advice." (*Id.*) In the Agreement, UIRC also "knowingly, voluntarily, and irrevocably waive[d] any right it may have to a trial by jury in respect of any claim based upon, arising out of or in connection" with its engagement of Blair. (*Id.* ¶ 11.) Finally, the Agreement also acknowledges that Blair offered similar services to other clients, providing, "It is understood and agreed that Blair may . . . perform investment banking or other services for, [UIRC] and other entities which are or may be the subject of the engagement contemplated by this agreement. This is to confirm that possible investors identified or contacted by Blair could include entities in respect of which Blair may have rendered or may in the future render services." (*Id.* ¶ 12.)

On or about January 20, 2014, Blair and UIRC entered into an indemnity agreement (the "UIRC Indemnity Agreement"), which they incorporated by reference into the UIRC Engagement Agreement. (*Id.* ¶ 13.) In the Indemnity Agreement, UIRC agreed to indemnify and hold harmless Blair "from and against any and all losses, claims, damages, or liabilities (collectively, 'Losses') and reasonable expenses incurred by them (including all fees and

3

expenses of Blair's . . . incurred at [UIRC's] request or otherwise incurred and reasonably required in connection with the investigation of any pending or threatened claims or preparation for any pending or threatened litigation or other proceedings) . . . arising out of or relating to Blair's engagement under such letter agreement." (*Id.* ¶ 14.) The Indemnity Agreement also states that UIRC "will not, without the prior written consent of Blair, settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which indemnification may be sought hereunder . . . unless such settlement . . . includes an unconditional release of Blair . . . from all liability arising out of such claim, action, suit, or proceeding." (*Id.* ¶ 15.) The Indemnity Agreement also indemnifies "Other Identified Parties" including "the respective members, principals, partners, directors, officers, and employees of Blair and its affiliates." (*Id.* ¶ 16.) In connection with Blair's engagement with UIRC, Blair worked with UIRC and counsel on certain deal documents governing the creation and issuance of GSA revenue bonds on behalf of UIRC. (*Id.* ¶ 17.)

Blair alleges that without its knowledge, UIRC obtained copyrights for the Preliminary Private Placement Memorandum ("PPPM IV," Copyright Reg. No. TX 8-069-779), a Final Private Placement Memorandum ("FPPM IV," Copyright Reg. No. TX 8-107-571), and an Indenture of Trust ("Indenture IV," Copyright Reg. No. TX 8-107-552), collectively, the "Registered Copyrights." (*Id.* ¶ 19.) Blair alleges that the UIRC Engagement Agreement does not constitute a "work-for-hire" agreement or confer ownership to UIRC of any materials Blair created. (*Id.* ¶ 20.) Blair claims that the works covered by the Registered Copyrights are a mix of pre-existing material available in the public domain, work product created by UIRC's and the lenders' outside counsel, boilerplate, and unprotectable material such as background facts. (*Id.* ¶ 21.)

4

Blair also separately represented RRA and Rainer GSA, together "Rainer," on unrelated deals and worked with Rainier and its outside lawyers on placement memoranda for Rainier relating to the creation and issuance of revenue bonds relating to different GSA properties. (*Id.* ¶ 22.) On October 26, 2015, UIRC filed a copyright infringement lawsuit against Rainier based on its use of placement memoranda that were prepared for Rainer's own bond offering. (*Id.* ¶ 23.) In connection with that suit, UIRC served a subpoena on Blair seeking certain documents, and, after responding to the subpoena, Blair sent a letter to UIRC's counsel notifying UIRC of its costs and expenses incurred in relation to the subpoena and reserving the right to seek reimbursement pursuant to the UIRC Indemnity Agreement. (*Id.* ¶¶ 25-26.) Blair did not receive a response from UIRC. (*Id.* ¶ 26.) On October 11, 2016, UIRC settled with Rainier, but Blair never received any notice from UIRC of the settlement as required by the Indemnity Agreement, nor did UIRC request Blair's consent to settle the underlying action with Rainier or obtain an unconditional release from Rainier of Blair relating to any claims in this case. (*Id.* ¶¶ 27-28.) Blair does not know the details of the settlement between Rainier and UIRC, but it alleges that UIRC entered into the agreement with blatant disregard for UIRC's contractual obligations to Blair and Blair's claims for indemnity. (*Id.* ¶ 29.)

**LEGAL STANDARD**

"Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a complaint for failure to state a claim upon which relief can be granted." *Hill v. Serv. Employees Int'l Union*, 850 F.3d 861, 863 (7th Cir. 2017). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544,

555 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). In determining the sufficiency of a complaint under the plausibility standard, courts must "accept as true all of the well-pleaded facts in the complaint and draw reasonable inferences in favor of [the] plaintiffs." *Hill*, 850 F.3d at 863; *see also Roberts v. City of Chi.*, 817 F.3d 561, 564 (7th Cir. 2016). In ruling on a Rule 12(b)(6) motion, district courts may also consider documents attached to the pleadings without converting the motion into a motion for summary judgment, as long as the documents are referred to in the complaint and central to the claims. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Indiana*, 786 F.3d 510, 528 n. 8 (7th Cir. 2015).

**ANALYSIS**

**I.     Counterclaim Against UIRC**

UIRC has moved to dismiss Counts II, III, IV, and V of Blair's Counterclaims. The Court addresses each Count in turn.

**A.  Count II—Accounting of Profits**

In Count II,[2] Blair alleges that it assisted with the preparation of the materials covered by the Registered Copyrights, and that it accordingly has joint ownership rights to some of that material. As such, Blair asserts that UIRC owes Blair a portion of any royalties it has received from the Registered Copyrights, including but not limited to any monies Rainier paid UIRC as

---

[2] UIRC has not moved to dismiss Count I.

6

part of their settlement. (Counterclaim ¶¶ 41-44.) UIRC responds that Blair has failed to establish that it is a co-owner of the copyrighted materials.

"A 'joint work' is a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C.A. § 101. According to the Seventh Circuit, "individuals are co-authors of a work only where they (1) intend to create a joint work; and (2) contribute independently copyrightable material." *Janky v. Lake Cty. Convention And Visitors Bureau*, 576 F.3d 356, 361 (7th Cir. 2009) (citing *Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061, 1071 (7th Cir. 1994)). The Seventh Circuit has explained "that the intent prong does not have to do with the collaborators' intent to recognize each other as co-authors for purposes of copyright law; the focus is on the parties' intent to work together in the creation of a single product, not on the legal consequences of that collaboration. *Janky*, 576 F.3d at 362 (citations omitted). "Billing" or "credit" may be evidence of the intent to create a joint work. *Id.* With respect to the second element, the Seventh Circuit has explained that "ideas, refinements, and suggestions" are not independently copyrightable, but if an alleged co-author contributed concrete expressions that were significant to the work's final product and commercial viability, the co-author's contributions may be considered independently copyrightable. *Id.* at 363.

Blair has sufficiently alleged the first element required to prove co-ownership—that the parties intended to create a joint work. Here, Blair has alleged that pursuant to its Engagement Agreement with UIRC, it had the stated task "of assisting UIRC with the arrangement and issuance of GSA revenue bonds" and "was required to, and did, assist in the preparation of any solicitation materials," including the private placement memorandum used for the GSA deal. (Counterclaim ¶ 9.) Blair has also alleged that in connection with the UIRC Engagement

Agreement, it worked with UIRC and its counsel to draft the GSA bond documents. (*Id.* ¶ 17.) While UIRC and Blair may or may not have intended to serve as co-authors for purposes of copyright law, these allegations are sufficient to state a plausible claim that Blair and UIRC intended to work together—and had a contractual agreement, the Engagement Agreement, stating as such—to create and draft a single, unitary product—the GSA bond solicitation materials over which UIRC claims copyrights. *See, e.g.*, *JCW Invs., Inc. v. Novelty, Inc.*, 289 F. Supp. 2d 1023, 1032 (N.D. Ill. 2003), *aff'd,* 482 F.3d 910 (7th Cir. 2007) (finding parties intended to be joint authors of unitary product where the parties exchanged drafts and drawing to work together to create the product).

The Court's inquiry then turns to whether Blair has sufficiently alleged that it contributed independently copyrightable work. The Seventh Circuit has held that a party asserting joint authorship must identify its "specific contributions" that could have been independently copyrighted. *Erickson*, 13 F.3d at 1072. Specifically, in *Erickson*, the Seventh Circuit rejected a group of actors' appeal of a preliminary injunction against them in which the district court found that they were not joint authors of certain plays, in part because the actors failed to "identify specific [independently copyrightable] contributions that they had made to" any of the plays at issue. *Id.* The court emphasized that "ideas, refinements, and suggestions" are not independently copyrightable and because the actors failed to identify any contributions that went beyond refinements and suggestions, they had failed to establish the elements of the joint ownership test. *Id. See also Big Daddy Games, LLC v. Reel Spin Studios, LLC*, No. 12-CV-449-BBC, 2013 WL 12233949, at *9 (W.D. Wis. Apr. 10, 2013) (finding party failed to meet second element of joint ownership test for video game because even though they provided instructions about sound and graphics, they failed to show their contributions when beyond general ideas,

refinements, and suggestions); *Brown v. Flowers*, 297 F. Supp. 2d 846, 852 (M.D.N.C. 2003), *aff'd,* 196 F. App'x 178 (4th Cir. 2006) (dismissing joint ownership claim because party failed to allege any details about his specific creative contributions to copyrighted songs); *BTE v. Bonnecaze*, 43 F. Supp. 2d 619, 628 (E.D. La. 1999) (finding no joint ownership because party failed to show that his suggestions ever became tangible expressions of copyrightable work).

Here, Blair has failed to allege any details about any contributions it made to the copyrighted materials at issue and has failed to allege specific facts from which the Court can draw such an inference. Blair alleges only that it "worked with UIRC . . . on certain deal documents" and "assist[ed] UIRC with the arrangement and issuance of GSA revenue bonds." (Counterclaim ¶¶ 9, 17.) Blair does not identify any material it contributed to the documents or provide any indication that the material it contributed was independently copyrightable or that it was more than mere ideas, refinements, and suggestions. Blair's argument that it cannot be expected to provide specific facts about its contributions to the copyrighted material because the parties have not yet engaged in discovery is unavailing because Blair is alleging that it contributed so significantly to the copyrighted material that it should be considered a co-author. If this allegation is at all plausible, Blair, the alleged co-author, should be able to describe its own contributions with enough specificity to satisfy *Twombly*. In sum, Blair's vague allegations are insufficient, even at the motion to dismiss stage, to support the inference under the Seventh Circuit's standards, that it contributed independently copyrightable material to the works at issue. *Compare Janky*, 576 F.3d at 363 (joint author contributed "concrete expressions" that were "important not only to the final sound, but also to [the] commercial viability" of the song), *with Erickson*, 13 F.3d at 1072 (actors not joint authors because they "could not identify specific

contributions that they had made to Ms. Erickson's works" and even if they could "the contributions . . . were not independently copyrightable").

Accordingly, the Court grants UIRC's motion to dismiss Count II of Blair's Counterclaim without prejudice.

### B. Count III—Contractual Indemnity

In Count III, Blair alleges that UIRC had a contractual duty to indemnify and hold harmless Blair and Kalt against the claims UIRC asserted against Blair and Kalt in this litigation, and Blair is thus entitled to damages from UIRC for any liability it incurs in this litigation. (Counterclaim ¶¶ 48-50.) The UIRC Indemnification Agreement provides that UIRC must indemnify and hold harmless Blair and the Other Indemnified Parties, which include Kalt, "from and against any and all losses, claims, damages, or liabilities . . . and reasonable expenses incurred by them (including all fees and expenses of Blair's and each of the Other Indemnified Parties' counsel . . . incurred and reasonably required in connection with the investigation of any pending or threatened claims or preparation for any pending or threatened litigation or other proceedings) . . . arising out of or relating to Blair's engagement under [the Engagement Agreement]." (*Id.* ¶ 14.) UIRC does not contest the validity of the Indemnity Agreement. Instead, UIRC argues that despite the broad language in the agreement, it applies only to third party claims and not to direct actions between the parties because other provisions in the Agreement clearly relate to third-party claims and would be rendered meaningless if the Indemnity Agreement applied to direct claims between the parties.

While several other jurisdictions have a general rule that an indemnity agreement must expressly provide for recovery in direct actions between the contracting parties,[3] Illinois law

---

[3] *See, e.g. Nova Research, Inc. v. Penske Truck Leasing Co., L.P.*, 408 Md. 435, 458, 952 A.2d 275, 288–89 (2008) (adopting the approach requiring the contract provide expressly for recovery in first party

"does not require that indemnification suits arise solely in the context of third-party claims." *ImagePoint, Inc. ex rel. Martin v. BFS Retail & Commercial Operations, LLC*, No. 13 C 4339, 2014 WL 7335167, at *8 (N.D. Ill. Dec. 19, 2014). In determining whether an indemnity clause applies to direct actions between the parties, courts will thus look to the plain language in the indemnity clause and the other language in the indemnity agreement to assess whether the parties contemplated coverage of first party lawsuits. *ImagePoint*, WL 7335167, at *8. Indeed, the Seventh Circuit has held that it is reasonable that a broad indemnity clause would apply to direct, first-party claims, and not exclusively third-party claims. *Am. Nat. Bank & Tr. Co. of Chi. v. Reg'l Transp. Auth.*, 125 F.3d 420, 433–34 (7th Cir. 1997) (holding that broad clause covering *any* claim did not cover only third-party claims). Each case, however, "will turn on the particular language used, and the particular factual setting to which the indemnification clause is sought to be applied." *Balcor Real Estate Holdings, Inc. v. Walentas-Phoenix Corp.*, No. 93 C 3065, 1995 WL 275594, at *3 (N.D. Ill. May 8, 1995), *aff'd,* 73 F.3d 150 (7th Cir. 1996) (citing *Tatar v. Maxon Construction Co.,* 294 N.E.2d 272, 273-74 (Ill. 1973).

Additionally, indemnification agreements, like all agreements between parties, are subject to the rules of contract interpretation. *Virginia Sur. Co. v. N. Ins. Co. of New York*, 866 N.E.2d 149, 153 (2007) ("an indemnity agreement is a contract and is subject to contract interpretation rules"). "Under Illinois law, the goal of contract interpretation is to ascertain the

---

enforcement actions); *Luna v. American Airlines*, 769 F. Supp. 2d 231, 243–44 (S.D.N.Y. 2011) (noting the general standard that when contractual language does not expressly contemplate that the contracting parties were concerned with prospective litigation between themselves, the indemnification provision will not cover it); *Travelers Indem. Co. v. Dammann & Co.,* 594 F.3d 238, 255 (3d Cir. 2010) (noting that first-party indemnification claims are not categorically barred, but interpreting the indemnification language to require third-party liability "for the clause to be triggered."); *NevadaCare, Inc. v. Dep't of Human Servs.,* 783 N.W. 2d 459, 471 (Iowa 2010) (analyzing split of authority, but finding that "a party to a contract cannot use an indemnity clause to shift attorney fees between the parties unless the language of the clause shows an intent to clearly and unambiguously shift the fees.").

parties' intent and, in doing so, we first look to 'the plain and ordinary meaning' of the contract language. *Selective Ins. Co. of S.C. v. Target Corp.*, 845 F.3d 263, 267 (7th Cir. 2016), *as amended* (Jan. 25, 2017) (citations and quotations omitted); *see also Hanover Ins. Co. v. N. Bldg. Co.*, 751 F.3d 788, 792 (7th Cir. 2014) (if a contract is "clear and unambiguous, the court must determine the intent of the parties solely from the plain language of the contract.") (citations omitted). Courts must construe the contract "as a whole, viewing each part in light of the others." *Aeroground Inc. v. CenterPoint Properties Trust*, 738 F.3d 810, 813 (citing *Gallagher v. Lenart*, 874 N.E.2d 43, 58 (2007)). Courts must also "seek to give effect to each clause and word used, without rendering any terms meaningless." *Selective Ins.*, 845 F.3d at 267 (citations omitted). Where the contract is ambiguous, "the language is a question of fact which a [court] cannot properly determine on a motion to dismiss." *Victory Records, Inc. v. Kalnoky*, No. 15 C 9180, 2016 WL 3181706, at *2 (N.D. Ill. June 8, 2016) (quoting *Quake Constr., Inc. v. Am. Airlines, Inc.*, 565 N.E.2d 990, 994 (1990)).

Applying these rules, several courts in this Circuit have found that broad indemnity clauses covered direct, first-party claims and were not limited to third-party claims, especially where the agreement does not contain other language indicating the agreement was limited to third parties. In *ImagePoint*, WL 7335167, at *8, for example, the court found that the parties' broad indemnification clause, which did not expressly limit itself to third party claims or expressly include direct claims, could cover direct claims under Illinois law. The court noted the extremely broad language in the clause and noted that the rest of the indemnification agreement did not contain additional provisions "which unmistakably relate to third-party claims," such as a notice provision. Similarly, in *Rexam Beverage Can Co. v. Bolger*, No. 06 C 2234, 2008 WL 5068824, at *1–2 (N.D. Ill. Nov. 25, 2008), *aff'd,* 620 F.3d 718 (7th Cir. 2010), the lessee agreed

12

to a comprehensive indemnity clause requiring coverage of all the lessor's legal expenses arising from any claim by any person or entity arising out of the lease. The lessee then sued the lessor, but the court entered a judgment for unpaid rent in favor of the lessor and against the lessee, and the lessor sought coverage under the indemnity agreement. *Id.* The court found that the indemnity clause was not limited to third-party claims and could be applied to the suit between the parties because the "plain language of the indemnification clause [was] broad enough to encompass" the lessor's claims and the purpose of an indemnity clause is "to make the wronged party whole." *Id.* at *2. (citing *Medcom Holding Co. v. Baxter Travenol Labs., Inc.,* 200 F.3d 518, 519 (7th Cir. 1999); *see also Balcor*, WL 275594, at *9 (finding that indemnification clause was not limited to third party suits and bound the indemnitor to pay the attorneys' fees and expenses caused by its own breach of the contract).

In contrast, in *Hallmark Ins. Admrs., Inc. v. Colonial Penn Life Ins. Co.*, 697 F. Supp. 319, 328, (N.D. Ill. Sept. 23, 1988), the plaintiff brought a breach of contract action against the defendant insurance company and sought to recover attorney's fees pursuant to an indemnity agreement after it prevailed on the defendant's motion for summary judgment. The parties' indemnity agreement required that the insurance company "indemnify, defend and hold [plaintiff] harmless from" all losses which the plaintiff might incur by the insurance company's negligence or misconduct or as a result of the plaintiff's adherence to the agreement. *Id.* The court found that the "hold harmless" language in the provision "strongly suggest[ed] that this provision only applie[d] in the event the plaintiff was found liable to a third party as a result of [the insurance company's] actions or inactions," and accordingly found that the plaintiff was not entitled to attorney's fees. *Id.*

UIRC argues that despite the broad, unlimited language in the Indemnity Agreement, four other provisions in the Agreement indicate that the parties intended to indemnify Blair only in relation to third-party actions. Specifically, UIRC cites the following provisions:

- A notice provision provides "in case any proceeding shall be instituted involving Blair or any other indemnified party, such party shall promptly notify [UIRC]," and argues that UIRC would not need to be notified of its own suit.

- The Agreement provides that "UIRC may assume the defense of the matter and may retain counsel reasonably satisfactory to the indemnified party to represent the indemnified party . . .," which UIRC argues indicates the agreement pertains to third parties since UIRC could clearly not choose Blair's counsel in a suit between the two parties.

- The contract requires mutual notification and consent between UIRC and Blair regarding settlement, which UIRC again argues would be unnecessary in a suit between the parties.

- The Agreement states that UIRC will "indemnify and hold harmless" Blair, which UIRC argues, citing *Hallmark*, is language that suggests the agreement applies to third-party suits.

(UIRC's Mot. to Dismiss 4-5.) While courts in this district have found that indemnity provisions that required that a party "hold harmless" the indemnified party both applied only to third-party suits and applied to direct suits between the parties,[4] the other provisions UIRC has referenced—a notice of suit provision, a notice of settlement provision, and a choice of counsel provision—are only applicable to third-party suits. The indemnity provision in the parties' Agreement, however, is extremely broad and it requires that UIRC indemnify Blair "from and against any and all losses . . . arising out of or relating to Blair's engagement under [the Engagement Agreement]." (Counterclaim ¶ 14.) This litigation presents a potential loss that arises out of or relates to Blair's engagement with UIRC, and thus, under the plain and unambiguous language of

---

[4] While the court in *Hallmark*, 697 F. Supp. at 328, interpreted the "hold harmless" language to be indicative of an intent to cover only third-party suits, other courts in this District have found that indemnity provisions that contained the "hold harmless" language were applicable to direct suits between the parties. *See ImagePoint*, WL 7335167, at *5, *Rexam*, WL 5068824, *2.

14

the indemnity provision, to which both sophisticated parties agreed, UIRC would be required to cover Blair's losses. While this language is inconsistent with the notice and choice of counsel provisions, it is possible that the parties intended for those provisions to apply only to third party claims, while the indemnity provision would apply to both third party claims and direct claims.

Here, pursuant Illinois's standards of contract interpretation, the Indemnification Agreement is not plain and unambiguous. The broad language in the indemnity provision is inconsistent with the language in other provisions of the Agreement, and this conflicting language creates ambiguity as to the intent of the parties, especially given that the Seventh Circuit has held that indemnification provisions can apply to direct claims. As noted above, when a contract is ambiguous, "the language is a question of fact which a [court] cannot properly determine on a motion to dismiss." *Victory Records*, WL 3181706, at *2. Accordingly, the Court cannot, especially at the motion to dismiss stage and without the benefit of either the Indemnity Agreement itself[5] or any extrinsic evidence, narrow the agreement to cover only third-party claims. *See Am. Nat. Bank*, 125 F.3d at 433–34 (considering extrinsic evidence parties presented regarding meaning of indemnity clause and holding that broad clause covering *any* claim did not cover only third-party claims). Viewing the allegations in the light most favorable to the Blair and drawing all reasonable inferences in Blair's favor, Blair has sufficiently alleged that the indemnity provision's language covers this lawsuit.

Accordingly, the Court denies UIRC's motion to dismiss Count III.

**C. Count IV—Breach of Contract**

In Count IV, Blair claims that UIRC has violated the UIRC Engagement Agreement and UIRC Indemnity Agreement by bringing this lawsuit and refusing to honor its indemnity

---

[5] Neither party attached the Indemnity Agreement or Engagement Agreement at issue to its pleadings or its briefs.

obligations and by settling its lawsuit with Rainier without obtaining consent from Blair. (Counterclaim ¶¶ 52-55.) UIRC argues that the Court should dismiss Blair's claim because Blair's allegations fail to cite to any specific provisions in either the Indemnity Agreement or the Engagement Agreement or cite to any language in the agreements that bar UIRC from bringing this lawsuit, refusing to indemnify Blair, or settling with Rainier.

While Blair's allegations in this Count do not include references to the specific contract provisions at issue,[6] Blair has incorporated its earlier allegations by reference and those allegations include references and quotations from the specific provisions Blair alleges that UIRC has breached. Specifically, Blair alleges that UIRC breached the Indemnity Agreement by failing to indemnify Blair from fees and expenses in this lawsuit, and Blair earlier alleges that the Indemnity Agreement required UIRC to indemnify Blair "from and against any and all losses . . . arising out of or relating to Blair's engagement under [the Engagement Agreement]." (Counterclaim ¶ 14.) Given that this litigation arises out of Blair's engagement with UIRC and Blaire alleges that UIRC has not indemnified it, the Court denies UIRC's motion to dismiss as it relates to Blair's claim that UIRC breached the Indemnification Agreement by failing to indemnify Blair in this lawsuit.

Similarly, Blair has sufficiently alleged that UIRC breached the settlement notice provision in the Indemnity Agreement. Blair alleges that the Agreement provides that UIRC "will not, without prior written consent of Blair, settle . . . any pending or threatened claim . . . in respect of which indemnification may be sought hereunder . . . unless such settlement . . . includes an unconditional release of Blair." (*Id.* ¶ 15.) Blair alleges that UIRC settled its lawsuit with Rainier, failed to obtain Blair's consent for the settlement, and did not include a release of

---

[6] As noted above, Blair has also failed to attach the contracts at issue to Counterclaim or to its brief.

Blair. As such, the Court also denies UIRC's motion to dismiss as it relates to Blair's claim that UIRC breached the settlement notice provision claim. To the extent Blair makes other claims—for filing this lawsuit, bringing a jury demand, and negligent performance—these claims are unsupported and vague and do not meet the requirements of *Twombly*. Accordingly, the Court grants UIRC's motion to dismiss those claims without prejudice.

The Court denies UIRC's motion to dismiss Count IV with regard to Blair's breach of the indemnity provision claim and breach of the settlement notice claim, and grants UIRC's motion with regard to all Blair's other claims in this count.

### D. Count V—Tortious Interference

In Count V, Blair claims that UIRC intentionally interfered with its ongoing, valid business relationship with Rainier, as well as the possibility of future business relationships with other competitors of UIRC that are interested in engaging Blair to assist them with the issuance of GSA revenue bonds by filing frivolous copyright infringement lawsuits. (Counterclaims ¶¶ 58-61.) UIRC argues that the Court should dismiss this claim because Blair has failed to allege that UIRC committed a tort and because filing a civil lawsuit cannot serve as the basis for a tortious interference with contract suit.

In Illinois, the elements of a claim of tortious interference with a business relationship or expectancy are: (1) the claiming party reasonably expected to enter into a business relationship; (2) the other party was aware of the claiming party's expectation; (3) the other party purposefully prevented the claiming party's business relationship from developing; and (4) the claiming party has suffered harm as a result of the other party's interference. *Botvinick v. Rush Univ. Med. Ctr.*, 574 F.3d 414, 417 (7th Cir. 2009); *see also McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 685 (7th Cir. 2014). The Seventh Circuit has held, however, that filing civil litigation cannot

alone form the basis of a tortious interference claim. *Havoco of Am., Ltd. v. Hollobow*, 702 F.2d 643, 647 (7th Cir. 1983) (holding that filing of a lawsuit "cannot give rise to liability as a tortious interference with business relationships.")

In Count V, Blair alleges that UIRC used "frivolous copyright infringement claims" to interfere with Blair's business relationship with Rainier. Blair's only other allegations relating to UIRC's conduct refer vaguely to UIRC's "intentional and wrongful acts." This allegation alone would be insufficient given the Seventh Circuit's bar on tortious interference suits based solely on the filing of lawsuits. *Rosales v. Weltman, Weinberg & Reis Co.*, No. 15-CV-06943, 2017 WL 1436957, at *5 (N.D. Ill. Apr. 24, 2017) (dismissing claim based on filing of lawsuit pursuant to litigation privilege because in Illinois, "the only cause of action recognized for the wrongful filing of a lawsuit is one for malicious prosecution or abuse of process.") (citing *Hacovo*, 702 F.3d 647). As in Count IV, however, in Count V, Blair also incorporates by reference its earlier allegations, and Blair alleged earlier in its Counterclaim that UIRC used the threat of continued copyright litigation to force Rainier to stop competing in the GSA revenue bond market. (Counterclaim ¶ 29.) While merely filing a civil suit cannot form the basis of a tortious interference claim, courts will allow a tortious interference claim to stand where the plaintiff has alleged that the defendant made threats about litigation in order to interfere with the plaintiff's business relationships. *See, e.g.*, *United Rd. Towing, Inc. v. IncidentClear, LLC*, No. 14 C 10191, 2015 WL 1598101, at *3 (N.D. Ill. Apr. 9, 2015) (denying motion to dismiss tortious interference claim and finding that plaintiff's allegation that defendant threatened to sue plaintiff's potential new employer was sufficient to allege unjustified interference with plaintiff's business expectancy); *180s, Inc. v. Gordini U.S.A., Inc.*, 602 F. Supp. 2d 635, 641 (D. Md. 2009) (denying motion to dismiss tortious interference claim because plaintiff sufficiently alleged that

18

defendant interfered with its economic expectancy by threatening groundless infringement related lawsuits).

Here, Blair has alleged that UIRC knowingly interfered with its business relationship with Rainier by threatening frivolous litigation, thereby harming Blair. Accordingly, viewing Blair's allegations in the light most favorable to Blair and drawing all reasonable inferences in its favor, Blair has sufficiently alleged a tortious interference claim.

## CONCLUSION

For the foregoing reasons, the Court grants UIRC's motion to dismiss Count II without prejudice, denies UIRC's motion to dismiss Count III, grants in part and denies in part UIRC's motion to dismiss Count IV, and denies UIRC's motion to dismiss Count V.

**Dated:** August 28, 2017

                                    **ENTERED**

                                    **AMY J. ST. EVE**
                                    **United States District Court Judge**