IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UIRC-GSA HOLDINGS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 15 CV 9518 |
| ) | |
| WILLIAM BLAIR & COMPANY, LLC., ) | Judge Robert W. Gettleman |
| and MICHAEL KALT, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff UIRC-GSA Holdings, Inc. sued William Blair & Company ("Blair") and Michael Kalt (collectively, "defendants"), alleging violations of the Copyright Act, 17 U.S.C. § 101 et seq. Defendants move to dismiss Count VI (copyright infringement), Count VII (contributory infringement against Kalt) and Count VIII (vicarious infringement against Kalt), arguing that plaintiff has failed to state a claim. For the following reasons, defendants' motion to dismiss is denied.

## BACKGROUND[1]

Plaintiff is a company that acquires and operates properties leased to the U.S. General Services Administration ("GSA") to be financed by the sale of bonds through its subsidiaries. Defendant Blair was plaintiff's investment banker and placement agent for certain bond offerings, the proceeds of which were used to acquire a portfolio of real estate properties. Defendant Kalt was plaintiff's relationship manager at Blair.

---

[1] Well-pled facts from plaintiff's complaint are presumed true for resolving defendants' motion to dismiss. Firestone Financial Corp. v. Meyer, 796 F.3d 822, 826 (7th Cir. 2015).

In Counts VI, VII and VIII, plaintiff alleges that, to successfully market a bond portfolio to provide the funds to acquire properties leased to GSA, plaintiff created and used a Private Placement Memorandum ("PPM I"), and an Indenture of Trust. Plaintiff owns the registered copyright for both documents. Without plaintiff's knowledge, defendants acquired a copy of PPM I and willfully infringed on plaintiff's copyright by copying original portions of PPM I for a bond offering issued by Rainier GSA Portfolio I ("Rainier"). Defendants used parts of PPM I to create two documents for Rainier: a confidential placement memorandum and an indenture of trust. Defendants distributed these documents to potential investors in Rainier's bond offering. The proceeds of that offering would be used by Rainier to acquire GSA leased properties.

For their bond offerings, plaintiff and Rainier hired the same investment bank, Blair, and had the same relationship manager, Kalt. Plaintiff alleges that Kalt encouraged or assisted Blair's copyright infringement of plaintiff's PPM I and Indenture of Trust.

## LEGAL STANDARDS

Defendants move to dismiss under Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, plaintiff's complaint must give fair notice of its claims and the grounds on which they rest. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The complaint must contain enough facts to state a claim that is "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation marks omitted), citing id. at 570. Plaintiff's claims are plausible if the court can "draw the reasonable inference" that defendants are liable for what the complaint alleges. Id. In reviewing the complaint, the court takes allegations as true and draws all inferences in plaintiff's favor, but the court need not accept the complaint's legal conclusions. Id. Plaintiff need not "delineate every detail of [its] legal theory," Robertson v. Allied Solutions, LLC, 902 F.3d 690, 695 (7th Cir. 2018), or plead "facts corresponding to the elements of a legal theory."

Chapman v. Yellow Cab Cooperative, 875 F.3d 846, 848 (7th Cir. 2017). In ruling on a motion to dismiss, a district court may consider documents attached to the pleadings when they are referred to in the complaint and central to the claims. Geinosky v. Chicago, 675 F.3d 743, 745 n. 1 (7th Cir. 2012).

A district court may also consider, by taking judicial notice, facts not subject to reasonable dispute because it is generally known within the trial court's territorial jurisdiction; or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). At defendants' request, the court takes judicial notice of: the definition of "Operating Lease," according to the Government Accountability Office's website; the definition of "Extraordinary Call or Redemption," according to the Municipal Securities Rulemaking Board's website; and the government's usually-unconditional obligation to pay rent for GSA leases, according to an article in an online business journal.

## DISCUSSION

To state a claim of copyright infringement, the complaint must allege that, (1) plaintiff owned a valid copyright, and (2) defendants copied original elements of plaintiff's work. Feist Publications, Inc. v. Rural Telephone Service Co., 499 U.S. 340, 361 (1991). Defendants move to dismiss, arguing that plaintiff has failed to allege either element.

First, defendants argue that plaintiff does not own a valid copyright because plaintiff seeks copyright protection for forms of expression that lack a "minimal level of creativity." Id. at 358. Specifically, defendants argue that: the terms "Excess Cash Flow/Defeasance Reserve Account" and "Cap Ex and Contingency Reserve Fund" are unprotectable fragments; the terms "Excess Cash Flow Defeasance Reserve Account" and "Extraordinary Redemption" are unprotectable expressions dictated solely by their function; and descriptions of GSA's leasing

3

structure constitute unprotectable facts. Second, defendants argue that because their work is not substantially similar to plaintiff's, a reasonable person would not conclude that they had copied original elements of plaintiff's work.

**1.      Valid copyright**

The Copyright Act does not protect facts, fragmented phrases, expressions dictated solely by function, or subjects that can be expressed only in certain ways. See Harper & Row Publishers, Inc. v. Nation Enterprises, 471 U.S. 539, 547 (1985) (facts); Alberto-Culver Co. v. Andrea Dumon, Inc., 466 F.2d 705, 710–11 (7th Cir. 1972) (fragmented phrases); Incredible Techs., Inc. v. Virtual Techs., Inc., 400 F.3d 1007, 1012 (7th Cir. 2005) (expressions dictated solely by function); Seng-Tiong Ho v. Taflove, 648 F.3d 489, 499 (7th Cir. 2011) (subjects that can be expressed only in certain ways). Defendants argue that these limitations on copyright protection apply to the terms and definitions in plaintiff's bond offering documents.

Although defendants' arguments may be meritorious at summary judgment or at trial, they do not carry the day on a motion to dismiss. See Merritt Forbes & Company Inc. v. Newman Investment Securities, Inc., 604 F. Supp. 943, 952 (S.D.N.Y. 1985) (denying summary judgment for defendants on a copyright infringement claim concerning bond documents, and holding that their originality was a triable issue of fact, when the plaintiff had submitted an affidavit from the author, and the defendants had submitted two affidavits from people familiar with the bond industry). Whether, for example, "Extraordinary Redemption" is a mere fragment—or, instead, has "separate value as a composition"— cannot be resolved on a motion to dismiss, even though the court takes judicial notice of how the term is defined by the Municipal Securities Rulemaking Board. Alberto-Culver Co., 466 F.2d at 711. Without affidavits, depositions or expert testimony, the court finds it plausible that the terms in plaintiff's

documents show the "modicum of creativity" required for copyright protection. Feist, 499 U.S. at 346; see also Continental Casualty Co. v. Beardsley, 253 F.2d 702, 704 (2d Cir. 1958) ("We find nothing which, as a matter of law, prevents the copyrighting of forms and insurance instruments . . . ."), quoted with approval in 1 Melville B. Nimmer and David Nimmer, Nimmer on Copyright § 2A.11 (2018). And just as the terms themselves are creative enough, so too are their definitions.

The same reasoning applies to facts concerning GSA's leasing structure. Although those facts may indeed be unprotectable, plaintiff's description of those facts may be an "original collocation of words" worthy of copyright protection. Feist, 499 U.S. at 348. On a record this sparse, defendants cannot show that plaintiff's description of GSA's leasing structure lacks even a modicum of creativity by pointing to the Government Accountability Office's definition of "Operating Lease," and a business journal's claims concerning the government's treatment of GSA leases. "Without any factual record," as Judge St. Eve wrote, "[the Court] cannot find that the allegedly copied expression in the Placement Memoranda is unprotectable as a matter of law . . . [.] Unlike songs or poems, GSA bond documents are complex financial documents relating to a niche investment market . . . [.]" UIRC-GSA Holdings Inc. v. William Blair & Co., LLC., No. 15-CV-9518, 2017 WL 1163864, at *4 (N.D. Ill. Mar. 29, 2017) (denying defendants' motion to dismiss the fourth amended complaint, in which they had argued that plaintiffs sought copyright protection of ideas, themes, and common phrases). Since then, defendants' arguments for dismissal have shifted slightly, but the factual record remains the same.

## 2. Copying of original elements

A plaintiff may prove copying by showing that, (1) the defendant had the opportunity to copy the original, and (2) "the two works share enough unique features to give rise to a breach of

the duty not to copy another's work." Peters v. West, 692 F.3d 629, 633–34 (7th Cir. 2012). Defendants argue that plaintiff's allegations do not satisfy the second requirement, which courts sometimes call "substantial similarity." Id. Works are substantially similar when "an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectible expression by taking material of substance and value." Wildlife Express Corp. v. Carol Wright Sales, Inc., 18 F.3d 502, 509 (7th Cir. 1994) (citation omitted).

Here, a reasonable person would conclude that defendants appropriated plaintiff's documents. A few comparisons suffice:

| Plaintiff's Placement Memorandum (cont.) | Defendants' Placement Memorandum (cont.) |
|---|---|
| A separate Excess Cash Flow/Defeasance Reserve Account shall be set aside to hold the net proceeds from any of the following "Extraordinary Transactions:" | A separate Excess Cash Flow/Defeasance Reserve Fund shall be set aside to hold the net proceeds from any of the following "Extraordinary Transactions:" |
| (i) proceeds received by any Borrowers from any Property sale during the term of the Bonds, after deduction of all costs of sale; plus | (i) proceeds received by any Borrowers from any Property sale during the term of the Financing, if the related Lease has been cancelled or terminated, after deduction of all costs of sale; plus |
| (ii) net insurance or condemnation proceeds received by any Borrowers in the event that all or a portion of any Property shall have been damaged, destroyed, condemned or taken by eminent domain or sold under a reasonably apprehended threat of the same so as to render the Property unsatisfactory for its intended uses, to the extent not reinvested in the Property; plus | (ii) net insurance or condemnation proceeds received by any Borrowers in the event that all or a portion of any Property shall have been damaged, destroyed, condemned or taken by eminent domain or sold under a reasonably apprehended threat of the same so as to render the Property unsatisfactory for its intended uses, to the extent not reinvested in the Property; plus |
| (iii) any Bond proceeds allocable to any Identified Property that is not acquired within four weeks following the initial issuance of the Bonds. | (iii) any loan proceeds allocable to any identified Property that is not acquired within 30 days following the closing of the Financing (as reduced to the extent of the costs of the Financing already expended). |
| Such reserve account proceeds shall be applied pro rata toward redemption of the Bonds based upon their respective outstanding principal amounts from time to time. | Such reserve fund proceeds shall be applied pro rata toward redemption of the Bonds based upon their respective outstanding principal amounts from time to time. |

6

| Plaintiff's Placement Memorandum (cont.) | Defendants' Placement Memorandum (cont.) |
|---|---|
| The Bonds will be subject to extraordinary redemption at par plus accrued, unpaid interest to the extent of net cash proceeds available from any of the following instances: | The Bonds will be subject to extraordinary redemption at par plus accrued, unpaid interest to the extent of net cash proceeds available from any of the following instances: |
| (i) failure of any of the Borrowers to acquire their Identified Properties within 28 days following the date of initial issuance of the Bonds –to be redeemed based on the ratable amount of the $30,000,000 of Issuer loans allocable to those Identified Properties; | (i) failure of any of the Borrowers to acquire their identified Properties within 30 days following the date of the closing of the Financing (to be applied pro rata based on the respective outstanding principal amounts of the Note allocable to those identified Properties); |
| (ii) occurrence of a casualty loss or a condemnation at a Property where:<br><br>(a) the GSA terminates its lease as a result of such event—in such case the full net proceeds from the casualty loss or condemnation are to be applied for extraordinary redemption; or<br><br>(b) the Borrower does not apply the full net proceeds from such casualty loss or condemnation toward the replacement/modification of its Property—in such case the full remaining net proceeds are to be applied for extraordinary redemption. | (ii) occurrence of a casualty loss or a condemnation at a Property where:<br><br>(a) the U.S. Government terminates its Lease as a result of such event (in such case the full net proceeds from the casualty loss or condemnation are to be applied for extraordinary redemption); or<br><br>(b) the U.S. Government does not terminate its Lease as a result of such event and the Borrower replaces/modifies the Property but the Borrower does not apply the full net proceeds from such casualty loss or condemnation toward the replacement/modification of its Property (in such case the full remaining net proceeds are to be applied for extraordinary redemption). |
| The GSA uses this firm/soft lease structure to accommodate statutory regulations which prohibit the GSA from entering into operating leases for which the net present value of the lease payments would exceed 90% of the cost to build and own itself. Any lease for which the net present value of the lease payments would exceed 90% is categorized as a capital lease, requiring a discrete Congressional appropriation. | The practice of dividing the lease term into firm and soft periods allows the GSA to enter into operating leases which don't require discrete congressional appropriations (leases for which the net present value of the lease payments exceeds 90% of the cost of the GSA to build and own a property itself are categorized as capital leases which require discrete congressional appropriations). |

(Tabulation added by the court). Because an ordinary reasonable person would conclude that the placement memoranda share enough unique features to give rise to a breach of the duty to not copy another's work, the works are substantially similar.

\* \* \*

Plaintiff's allegations allow the court to draw the reasonable inference that plaintiff owned a valid copyright, and that defendants copied original elements of plaintiff's work. Consequently, plaintiff has stated a claim for copyright infringement, and Count VI survives defendants' motion to dismiss. Defendants also moved to dismiss Counts VII (contributory infringement against Kalt) and VIII (vicarious infringement against Kalt), arguing that that those counts rise and fall with Count VI. Because Count VI survives, Counts VII and VIII do as well.

## CONCLUSION

Defendants' motion to dismiss [Doc. 251] is denied. Defendants are directed to answer the complaint on or before January 10, 2019. The parties are directed to submit a joint status report using this court's form on or before January 17, 2019. This case is set for a report on status on January 30, 2019, at 9:10 a.m.

**ENTER:** **December 13, 2018**

Robert W. Gettleman
United States District Judge