IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UIRC-GSA HOLDINGS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 15 CV 9518 |
| | ) | |
| WILLIAM BLAIR & COMPANY, LLC., | ) | Judge Robert W. Gettleman |
| and MICHAEL KALT, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff UIRC-GSA Holdings, Inc. sued William Blair & Company ("Blair") and Michael Kalt (collectively, "defendants"), alleging violations of the Copyright Act, 17 U.S.C. § 101 et seq. Both defendants have moved for summary judgment (Doc. 365; Doc. 368), and plaintiff has moved for partial summary judgment (Doc. 382). For the reasons stated below, defendants' motions are granted, and plaintiff's motion is denied.

## BACKGROUND

Plaintiff acquires and operates properties leased to the U.S. General Services Administration ("GSA") to be financed by the sale of bonds through its subsidiaries. Defendant Blair was plaintiff's investment banker and placement agent for certain bond offerings, the proceeds of which were used to acquire a portfolio of real estate properties. Defendant Kalt was plaintiff's relationship manager at Blair.

Between 2012 and the close of discovery, plaintiff executed a total of six bond offerings—"UIRC I" through "UIRC VI." To market a bond offering successfully, plaintiff created and used a Private Placement Memorandum ("PPM") and an Indenture of Trust.

Plaintiff registered copyrights in the PPM for the UIRC I transaction ("PPM I"), as well as the preliminary and final versions of the PPM and the Indenture of Trust for the UIRC IV transaction (the "PPM IV," the "FPPM IV," and the "Indenture IV," respectively). To be clear, plaintiff could not copyright the entire document, and the Copyright Office required plaintiff to disclaim "standard legal language." At issue, then, are several paragraphs within these documents.[1]

Defendants note that plaintiff's documents appear to be revised versions of offering documents from an earlier deal involving third parties unrelated to plaintiff, namely the Idaho Housing and Finance Association. Plaintiff concedes that its attorneys provided the Idaho deal documents as a template, but claims that its top executives "spent about six months painstakingly writing and re-writing the critical sections of the [PPM]," and "did almost all of the work themselves." Defendant contests this assertion, noting that plaintiff's documents have substantial overlap with the Idaho deal documents, such that they are verbatim or near verbatim. It is undisputed that plaintiff did not receive permission to use the Idaho deal documents. It is also undisputed that Blair and Kalt played no meaningful role in the drafting process for plaintiff's documents.

At some point in late 2014, a competitor of plaintiffs, Rainier, completed a bond offering very similar to plaintiff's. Blair acted as the investment banker and placement agent for Rainier, and Kalt was Rainier's relationship manager. Plaintiff asserts that Blair approached Rainier and helped Rainier "mimic" plaintiff's successful bond offerings, using plaintiff's copyrighted

---

[1] Plaintiff highlighted the portions of its documents that it asserts to be the copyrightable material at issue here. A review of the highlighted portions shows that plaintiff claims a copyright in the general description of the type of GSA revenue bonds, the application of proceeds generated by the GSA revenue bonds, many of the particular terms governing the GSA revenue bonds, and many of the definitions contained in the bonds.

documents.[2] Rainier's confidential placement memorandum and indenture of trust appears to have striking similarities to PPM I. Plaintiff further claims that this overlap is intentional, and that Kalt actively encouraged and personally directed Blair's employees and Blair's outside counsel to use the infringing materials to solicit other clients, including Rainier.[3]

Defendants dispute plaintiff's characterization, arguing that only 5% of the Rainer confidential placement memorandum is alleged to be copied from plaintiff's documents, and even less for Rainier's indenture of trust. Defendants also note that they did not draft Rainier's documents, rather the law firm Mayer Brown did. Relevant for the vicarious copyright infringement and contributory copyright infringement claims, Kalt disputes his authority to control or supervise other employees and claims he had no financial interest in the alleged infringement.

## DISCUSSION

Summary judgement is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgement as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." Brummett v. Sinclair Broadcast Group, Inc., 414 F.3d 686, 692 (7th Cir. 2005). When considering a motion for summary judgment, the court must construe the evidence and make all reasonable inferences in favor of the non-moving party. Hutchinson v. Fitzgerald Equip. Co., Inc., 910 F.3d 1016, 1021 (7th Cir. 2018).

---

[2] Defendants note that investment bankers and investment banking firms are not bound by conflict rules similar to attorneys.

[3] Plaintiff originally sued Rainier, but after settling (Doc. 61), plaintiff substituted Blair and Kalt as defendants.

Whether a particular work is copyrightable is an issue of law for the court. Schrock v. Learning Curve Int'l, Inc., 586 F.3d 513, 517 (7th Cir. 2009). In a copyright infringement case, summary judgment should be granted "when there is no genuine issue of material fact regarding public domain and the lack of originality required for a work to be entitled to copyright protection." Marobie-Fl., Inc. v. National Ass'n of Fire Equipment Distributors, 2000 WL 1053957, at *3 (N.D. Ill. July 31, 2000).

Blair moves for summary judgment, arguing that plaintiff's documents are not entitled to copyright protection because they are unauthorized derivative works and lack originality. Blair also makes arguments regarding damages. Kalt adopts Blair's arguments, and moves for summary judgment on the remaining contributory infringement and vicarious infringement claims against him. Finally, plaintiff moves for partial summary judgment on the issue of Blair's liability found in Counts I, III, and VI of the Fifth Amended Complaint.

A claim for copyright infringement has two elements: "(1) ownership of a valid copyright[;] and (2) copying of constituent elements of the work that are original." Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 361 (1991); Schrock, 586 F.3d at 517. There is no dispute that only the first element is at issue here.

As a constitutional and statutory matter, "[t]he sine qua non of copyright is originality." Feist, 499 U.S. at 345; Schrock, 586 F.3d at 518-19; 17 U.S.C. § 102. Originality in this context "means only that the work was independently created by the author…and that it possesses at least some minimal degree of creativity. Schrock, 586 F.3d at 519. The Supreme Court has emphasized that "the requisite level of creativity is extremely low; even a slight amount will suffice." Feist, 499 U.S. at 345. The Court also explained that "[o]riginality does not signify novelty; a work may be original even though it closely resembles other works." Id. What is

4

required is "independent creation plus a modicum of creativity." Id. at 346. However, the Copyright Act does not protect facts, fragmented phrases, expressions dictated solely by function, or subjects that can be expressed only in certain ways. See Harper & Row Publishers, Inc. v. Nation Enterprises, 471 U.S. 539, 547 (1985) (facts); Alberto-Culver Co. v. Andrea Dumon, Inc., 466 F.2d 705, 710–11 (7th Cir. 1972) (fragmented phrases); Incredible Techs., Inc. v. Virtual Techs., Inc., 400 F.3d 1007, 1012 (7th Cir. 2005) (expressions dictated solely by function); Seng-Tiong Ho v. Taflove, 648 F.3d 489, 499 (7th Cir. 2011) (subjects that can be expressed only in certain ways).[4]

Defendants argue that the copyrighted portions of plaintiff's documents lack the requisite modicum of creativity and originality, are unauthorized derivative works based on the Idaho deal documents, and are largely unprotectable facts, ideas, or fragmented or functional phrases, such as definitions of terms. Plaintiff responds that their executives painstakingly rewrote their documents such that they are unique and original. Citing Cohen v. United States, 105 Fed. Cl. 733, 741 (2012), plaintiff further argues that the works cannot be derivative unless the underlying work is also subject to copyright protection, and there is no indication that the Idaho documents were copyrighted.

The court has carefully reviewed all of the exhibits and demonstratives provided by the parties, including the redline comparisons of the Idaho deal documents, plaintiff's copyrighted documents, and Rainier's allegedly infringing documents. After careful review, the court

---

[4] To benefit from copyright protections, "the author must register the design with the United States Copyright office," Design Ideas, Ltd. v. Yankee Candle Co., Inc., 889 F.Supp.2d 1119, 1126 (C.D. Ill. 2012), and registration is a prerequisite to a suit to enforce a copyright. That prerequisite has been satisfied here, and plaintiff registered its trademarks before filing this suit. However, even if the Copyright Office granted registration, a copyright infringement lawsuit permits the court to determine whether the work is entitled to copyright protection. As noted previously, this determination is an issue of law for the court and is appropriate for resolution on summary judgment.

concludes that plaintiff's documents lack originality and are not sufficiently creative to warrant copyright protection. A few comparisons suffice (tabulation added by the court):

| Idaho Indenture of Trust | Plaintiff's Copyrighted Indenture of Trust |
|---|---|
| "**Additional Payments**" means the payments so designated and required to be made by the Borrower pursuant to Section 4.2 of the Loan Agreement. […] | "**Additional Payments**" means the payments so designated and required to be made by each Borrower pursuant to the applicable provisions of its Loan Agreement. […] |
| "**Loan Agreement**" means that certain Loan Agreement by and between the Issuer and Borrower, dated as of July 1, 2011, as originally executed and as it may from time to time be supplemented, modified or amended in accordance with the terms thereof and of this Indenture. | "**Loan Agreement**" means that certain Loan Agreement by and between the Issuer and each Borrower, dated as of the Acquisition Date, as originally executed and as it may from time to time be supplemented, modified or amended in accordance with the terms thereof and of this Indenture, and the "Loan Agreements" shall mean the sum of all Loan Agreements or such lesser amount as applicable in context. |

| Idaho PPM | Plaintiff's Copyrighted FPPM IV |
|---|---|
| No Right to Accelerate Rental Consideration | No Right to Accelerate Rental Consideration |
| Although the Indenture permits the Trustee to accelerate the maturity of the Series 2011 Bonds following an Event of Default thereunder, the Lease does not provide for acceleration of the rentals in the event of a payment default by the Battelle. However, in the event of such a default, the Trustee would be entitled to bring an action to enforce the payment of rentals under the Lease. […] | Although the Indenture permits the Trustee to accelerate the maturity of the Bonds following an Even of Default thereunder, the Leases do not provide for acceleration of the rentals in the event of a payment default by the applicable lessee. However, in the event of such a default, the Trustee would be entitled to bring an action to enforce the payment of rentals under the Leases. […] |

Plaintiff cannot "show the requisite incremental originality, slight as it need be." Pickett v. Prince, 207 F.3d 402, 405 (7th Cir. 2000). Plaintiff's copyrighted paragraphs are incredibly similar to those in the Idaho deal documents, such that they cannot be original. Indeed, whole sentences and paragraphs are verbatim or near verbatim. And any changes plaintiff made to the Idaho deal documents are "merely trivial variation," Wilson v. Electro Marine Sysms., 1986 WL 12604, at *8 (N.D. Ill. Aug. 18, 1997), such as tinkering with prepositions and punctuation,

6

changing singular nouns to plural ones, and reworking short phrases. None of these changes are original enough to warrant protection.

For the more substantial phrases and paragraphs, even if they include a modicum of originality, they are not entitled to copyright protection because they consist of unprotectable facts, functional phrases akin to instructions, fragmented phrases, or subjects that can be expressed only in certain ways, such as definitions of terms.[5]

Finally, the parties dispute whether plaintiff's documents are unauthorized derivatives of the Idaho deal documents. Defendants argue that plaintiff's copyrights are invalid because plaintiff's documents are wholly based off the Idaho deal documents, and because the copying was done without permission (a fact plaintiff does not dispute). See Schrock, 586 F.3d at 522-23 (noting that § 106(2) "means the author of a derivative work must have permission to make the work from the owner of the copyright in the underlying work"); see also Pickett v. Prince, 207 F.3d 402, 405-07 (7th Cir. 2000). Citing one case from the federal Court of Claims (Cohen, 105 Fed. Cl. 733 (2012)), plaintiff argues that this doctrine does not apply because defendants have not shown that the Idaho deal documents were copyrighted. Defendants respond with a single citation of their own, Pickett, 207 F.3d at 405, arguing that the underlying work need not have a registered copyright for the work in question to be considered a derivative. Ultimately, the court need not resolve that question, because plaintiff's documents lack the requisite originality for copyright protection, and otherwise consist of unprotectable material.

---

[5] Indeed, it is clear to the court that standardization across bond offerings is required and is the industry norm, which is why investment bankers and attorneys use template documents in the first place.

Because the works are not subject to copyright protection, there can be no infringement. Consequently, plaintiff's claims against Kalt for contributory infringement and vicarious infringement fail, and the court need not reach defendants' arguments regarding damages.

## **CONCLUSION**

For these reasons, defendants' motions for summary judgment (Doc; 365; Doc. 368) are granted, and plaintiff's motion for summary judgment is denied (Doc. 382). Civil case terminated.

**ENTER:**

_Robert W. Gettleman_
**Robert W. Gettleman**
**United States District Judge**

**DATE: September 29, 2021**