IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UIRC-GSA Holdings, LLC,<br>   Plaintiff,<br><br> v.<br><br>WILLIAM BLAIR & COMPANY, LLC, and<br>MICHAEL KALT,<br>   Defendants.<br>_____<br><br>WILLIAM BLAIR & COMPANY, LLC<br>   Cross-Plaintiff,<br><br> v.<br><br>UIRC-GSA HOLDINGS, LLC and URBAN<br>INVESTMENT RESEARCH CORP.<br>   Cross-Defendants.<br>_____<br><br>WILLIAM BLAIR & COMPANY, LLC<br>   Third-Party Plaintiff,<br><br> v.<br><br>RAINIER REALTY ACQUISITIONS GP., LLC<br>And RAINIER GSA PORTFOLIO I, LLC,<br>   Third-Party Defendants.<br>_____<br><br>RAINIER REALTY ACQUISITIONS GP., LLC<br>and RAINIER GSA PORTFOLIO I, LLC,<br>   Counter-Third-Party Plaintiffs,<br><br> v.<br><br>WILLIAM BLAIR & COMPANY, LLC<br>   Third Party Defendant. | Case No. 15 CV 9518<br><br>Judge Robert W. Gettleman |

**MEMORANDUM OPINION AND ORDER**

Plaintiff UIRC-GSA Holdings, Inc. ("UIRC-GSA") sued William Blair & Company ("Blair") and Michael Kalt, alleging violations of the Copyright Act, 17 U.S.C. § 101 et seq. Blair brought four counterclaims against UIRC-GSA and Urban Investment Research Corp., ("Urban Investment") (together, "UIRC"): Count I requests a declaration of invalidity for UIRC-GSA's copyrights; Count II seeks contractual indemnity; Count III alleges breach of contract; and Count IV alleges tortious interference with Blair's business relationships. (Doc. 290). Blair additionally brought a third-party complaint against Rainier Realty Acquisitions GP ("RRA") and Rainier GSA Portfolio I, LLC ("Rainier GSA") (together, "Rainier"). That third-party complaint brings three main claims: Count I and Count III allege contractual indemnity for RRA and Rainier GSA, respectively; Count II and Count IV allege breach of contract against RRA and Rainier GSA, respectively; and Count VI and Count VII seek contractual contribution. (Doc. 148). Rainier brought a counterclaim against Blair, alleging breach of good faith and fair dealing. (Doc. 308). On September 29, 2021, the court ruled on UIRC and Blair's partial motions for summary judgment on copyright liability, holding that UIRC did not have a valid copyright in its deal documents. (Doc. 414).

Before the court are several cross-motions for summary judgment. UIRC moves for summary judgment on Counts I – IV of Blair's counterclaims. Blair cross-moves for summary judgment on Counts I – III of its counterclaims. Rainier moves for summary judgment on Counts I – IV of Blair's third-party complaint.[1] Blair cross-moves for summary judgment on

---

[1] Rainier originally moved for summary judgment on Counts VI and VII of Blair's counterclaim as well. In Blair's response brief, Blair conceded that, as a result of this court's earlier order dated September 29, 2021, (Doc. 414), Rainier is entitled to summary judgment on those counts and Blair is no longer seeking contribution.

Counts I – IV of its third-party complaint, and moves for summary judgment on Rainier's breach of good faith and fair dealing counterclaim.

## BACKGROUND

The majority of facts are uncontested, and the few contested issues are not material. The court includes the following recitation of facts for clarity and background purposes. UIRC acquires and operates properties leased to the U.S. General Services Administration ("GSA") to be financed by the sale of bonds through its subsidiaries. Blair was UIRC's investment banker and placement agent for certain bond offerings, the proceeds of which were used to acquire a portfolio of real estate properties. Kalt was UIRC's relationship manager at Blair. Between 2012 and the close of discovery, plaintiff executed a total of six bond offerings;"UIRC I" through "UIRC VI." UIRC and Blair executed two agreements to govern their relationship, an Engagement Agreement and an Indemnity Agreement. During the course of this relationship, and allegedly unbeknownst to Blair, UIRC took the unusual step of copyrighting its deal documents.

While working with UIRC, Blair was also retained by RRA to serve as an investment banker and placement agent for bond offerings. As with UIRC, Kalt was RRA's relationship manager. RRA's bond offerings used the same strategy as UIRC's. UIRC claims that Blair approached RRA and helped RRA "mimic" UIRC's successful bond offerings, using UIRC's documents. UIRC claims that Kalt actively encouraged and personally directed Blair's employees and Blair's outside counsel to use UIRC's materials to solicit other clients, including RRA.

The relationship between Blair and Rainier is governed by two agreements, an Engagement Agreement and an Indemnity Agreement. Blair help Rainier create and structure

their bonding offering, suggesting that RRA create a new entity called Rainier GSA to issue the bonds. However, the only party listed in both the Engagement Agreement and the Indemnity Agreement is RRA.

After learning of the Rainier transaction, in October 2015, UIRC sued Rainier GSA, alleging that Rainier GSA infringed UIRC's copyrights by copying certain deal documents. In September 2016, Rainier GSA and UIRC settled those claims.[2] UIRC then sued Blair and Kalt. Blair claims that Rainier GSA "convinced UIRC to shift its focus to and sue Blair." In response, Blair brought a third-party complaint against RRA and Rainier GSA, and brought counterclaims against UIRC.

Blair contends that it was unaware of the settlement between UIRC and Rainier GSA, and that both UIRC and Rainier had separate obligations under their Indemnity Agreements to provide notice of the settlement to Blair and to obtain a release for Blair. Rainier and UIRC counter that Blair was involved in the preliminary settlement negotiations in October 2015, and that Blair's grievances regarding the settlement are disingenuous.

## **DISCUSSION**

Summary judgement is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgement as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." Brummett v. Sinclair Broadcast Group, Inc., 414 F.3d 686, 692 (7th Cir. 2005). When considering a motion for summary judgment, the court must construe the evidence and make all reasonable inferences in

---

[2] As part of that settlement, UIRC acquired an ownership interest in Rainier GSA.

favor of the non-moving party. Hutchinson v. Fitzgerald Equip. Co., Inc., 910 F.3d 1016, 1021 (7th Cir. 2018).

## I. Blair's Counterclaims against UIRC

UIRC moves for summary judgment on Counts I – IV of Blair's counterclaims, and Blair cross-moves for summary judgment on Counts I – III of its counterclaims. The court will discuss each count in turn.

Regarding Count I, Blair asserts that it is entitled to a declaration of invalidity following the court's determination that each of UIRC's asserted copyrights is invalid and unenforceable. UIRC responds that Count I is moot based on the court's earlier summary judgment order, which held that UIRC did not have a valid copyright in its deal documents. Indeed, Blair essentially concedes in its response brief that the court has already resolved this issue. Because the court provided relief on the copyright claims in its earlier order, Count I is unnecessary and is dismissed as moot.

Count II brings a claim for contractual indemnity. UIRC argues that it is entitled to summary judgment because: (1) the contracts between the parties terminated on June 30, 2015, and this suit was filed after that date; and (2) the Indemnity Agreement applies only to third-party claims and not claims between UIRC and Blair. Only the second argument is compelling.

UIRC's first argument—that the contract terminated on June 30, 2015, and that this suit was filed after that date—is a nonstarter. A simple reading of the Indemnity Agreement and Engagement Agreement demonstrates that the Indemnity Agreement has no termination date. And the June 30, 2015, provision that UIRC relies on relates to termination of Blair's

engagement, not the other contractual obligations.[3] Indeed, the other contractual obligations, including UIRC's indemnity obligations, survived the June 30, 2015, termination date.

That being said, the court finds that the Indemnity Agreement applies only to third-party claims. Indemnification agreements, like all agreements between parties, are subject to the rules of contract interpretation. Virginia Sur. Co. v. N. Ins. Co. of Ne York, 866 N.E.2d 149, 153 (2007). If a contract is "clear and unambiguous, the court must determine the intent of the parties solely from the plain language of the contract." Hanover Ins. Co. v. N. Bldg. Co., 751 F.3d 788, 792 (7th Cir. 2014) (internal citations omitted).

"In Illinois, a contractual indemnification clause may be 'broad enough to encompass claims for both first-party and third-party claims for indemnity.'" City of Chi. v. Motive Power Sys., Inc., 2019 WL 2994504, at *2 (N.D. Ill. July 9, 2019) (citing Walgreen Co. v. Panasonic Healthcare Corp. of N. Am., 2017 WL 6731973, at *4 (N.D. Ill. Dec. 29, 2017)). If a contract does not expressly limit its scope to direct or third-party claims, courts will turn to provisions that "'unmistakably relate to third-party claims,' such as requiring notice be given to the indemnitor," to determine the intent of the parties. ImagePoint Inc. ex. rel. Martin v. BFS Retail & Commercial Operations, LLC, 2014 WL 7335167, at *8 (N.D. Ill. Dec. 19, 2014) (quoting Hooper Assoc., Ltd. v. AGS Computers, Inc., 549 N.Y.S.2d 365, 367 (1989)).

Here, the Indemnity Agreement does not expressly address third-party claims or direct claims between UIRC and Blair. However, the Indemnity Agreement includes several provisions that "unmistakably relate to third-party claims." First, the Indemnity Agreement provides that "in case any proceeding shall be instituted involving Blair or any other indemnified

---

[3] That provision reads: "Notwithstanding anything to the contrary contained herein, Blair's engagement in all events shall terminate on June 30, 2015 if not earlier terminated hereunder."

6

party, such party shall promptly notify [UIRC]." Notice provisions such as these quintessentially relate to third-party claims. See, id. The Indemnity Agreement next provides that, "[UIRC] may assume the defense of the matter and may retain counsel reasonably satisfactory to the indemnified party to represent the indemnified party and any others [UIRC] may designate in such proceeding…." This provision allows UIRC the right to choose Blair's counsel—a provision that would be otherwise absurd in a direct suit between UIRC and Blair. These provisions demonstrate the intent that the Indemnity Agreement apply only to third-party claims. Given these provisions, the intent of the parties could not have been otherwise. Consequently, the court grants summary judgment for UIRC on Count II of Blair's counterclaim. Blair's motion for summary judgment on Count II is denied.

Count III brings a claim for breach of contract against UIRC. In Illinois, a breach of contract claim has four elements: (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff. Ironbeam, Inc. v. Papadopoulos, 432 F.Supp.3d 769, 777 (N.D. Ill. 2020) (citing Hongbo Han v. United Cont'l Holdings, Inc., 762 F.3d 598, 600 (7th Cir. 2014)). Blair argues that UIRC breached the contract by failing to indemnify Blair, failing to obtain Blair's written consent for UIRC's settlement with Rainier GSA, and failing to obtain a release for Blair.

UIRC argues that it was not required to obtain Blair's consent to settle or to obtain a release of Blair, because those steps were required only for suits for which UIRC was obligated to indemnify Blair. UIRC also claims that Blair had actual notice of the settlement, because it participated in the early settlement negotiations in October 2015. As UIRC notes, the Indemnification Agreement states that UIRC "will not, without the prior written consent of Blair, settle or compromise or consent to the entry of judgment in any pending or threatened claim,

7

action, suit or proceeding <u>in respect of which indemnification may be sought hereunder</u> ….." (emphasis added). UIRC thus argues that, because Blair is not entitled to indemnification from UIRC, UIRC had no obligation to notify Blair of the settlement or obtain a release.

Having determined that UIRC had no obligation to indemnify Blair, the court finds that UIRC cannot be liable for breach of contract based on UIRC's failure to indemnify, or for UIRC's failure to obtain a release or inform Blair of the settlement. The court grants UIRC's motion for summary judgment on Count III, and denies Blair's motion for summary judgment on Count III.[4]

UIRC additionally moves for summary judgment on Blair's tortious interference claim in Count IV. In Illinois, the elements of a claim for tortious interference with a business relationship or expectancy are: (1) the claiming party reasonably expected to enter into a business relationship; (2) the other party was aware of the claiming party's expectation; (3) the other party purposefully prevented the claiming party's business relationship from developing; and (4) the claiming party has suffered harm as a result of the other party's interference. <u>Botvinick v. Rush Univ. Med. Ctr.</u>, 574 F.3d 414, 417 (7th Cir. 2009). Blair claims that UIRC interfered with Blair's relationship with Rainier though UIRC's "wrongful" lawsuit, and that UIRC made "threats" and false statements to Rainier. Blair responds that there are issues of fact that make summary judgment inappropriate.

As the court mentioned in a previous order, <u>UIRC-GSA Holdings v. William Blair &Co., LLC</u>, 264 F.Supp.3d 867, 908 (N.D. Ill. 2017), the Seventh Circuit has held that the mere filing

---

[4] Based on this ruling, the court need not reach the issue of alter ego liability for UIRC raised by Blair.

of a lawsuit cannot be the basis of a tortious interference claim.[5] Havoco of Am., Ltd. v. Hollobow, 702 F.2d 643, 647 (7th Cir. 1983) (holding that the filing of a lawsuit "cannot give rise to liability as a tortious interference with business relationships"). Thus, the only issue is whether UIRC's "threats" and statements to Rainier prevented Blair from acting as Rainer's placement agent for a second bond offering.

The "threats" identified by Blair include a telephone call between UIRC's principals and Rainier's principals while the latter were golfing. There is a minor dispute about when the call took place, but no dispute that UIRC's principal, Biz Brackett, said to the Rainier principals: "You stole my stuff. Where did you get it? Who did you get it from? Why did you do it?" Such statements hardly constitute threats, let alone threats sufficient to constitute tortious interference with a business relationship. Blair next claims that UIRC made several false statements that caused Rainier to believe that Blair was withholding information from Rainier regarding UIRC's copyrights. In support, Blair cites two pages from the deposition of Rainier's 30(b)(6) witness, which do not identify any specific statements other than that UIRC mentioned the word "copyright" to Rainier. Consequently, there is no evidence from which a reasonable jury could infer that UIRC made any "threats" or "false statements" to Rainier, let alone statements that would interfere with a possible second transaction between Blair and Rainier.

---

[5] A tortious interference claim can potentially prevail if the plaintiff demonstrates that the defendant threatened frivolous litigation, but such a claim "requires, among other things, an intentional and unjustified interference by the defendant." Pactiv, LLC v. Multisorb Techs., Inc., 63 F.Supp.3d 832, 842 (N.D. Ill. 2014). A threat of litigation is unjustified only if the threatening party knew or should have known that the threatened suit was "a sham" and "objectively meritless." Id. At the time UIRC filed suit, UIRC had valid copyrights in its documents. While this court later invalidated UIRC's copyrights, there is no evidence in the record to suggest that, at the time of filing, this lawsuit was a "sham" such that UIRC interfered with Blair's business relationships.

Blair has failed to present sufficient evidence from which a jury could conclude that UIRC acted tortiously. Consequently, the court grants UIRC's motion for summary judgment on Blair's tortious interference claim (Count IV).

## II. Blair's Third-Party Claims against Rainier

Both parties move for summary judgment on Counts I through IV of Blair's third-party claims against Rainier. Counts I and III are for contractual indemnity against RRA and Rainier GSA, respectively; Counts II and IV are for breach of contract against RRA and Rainier GSA, respectively. The parties discuss the breach of contract and indemnity claims together, and the court will do the same.

Rainier argues that it is entitled to summary judgment on both the contractual indemnity counts and breach of contract counts. It is undisputed that RRA and Blair entered into an Indemnity Agreement and an Engagement Agreement. Blair's claims for indemnity and breach of contract are based on the language of the Indemnity Agreement, which provides that RRA will not settle a claim or lawsuit in which indemnification may be sought by Blair, without obtaining a release of Blair. The Indemnity Agreement identifies only one Rainier party—RRA—and says nothing about RRA's subsidiaries or affiliates.

According to Rainier, it is further undisputed that UIRC sued Rainier GSA, and that UIRC and Rainier GSA eventually settled. UIRC did not sue or settle with RRA. In fact, RRA was not a party to this lawsuit until Blair brought its third-party complaint against Rainier GSA and RRA. Rainier argues that, because RRA was not sued and thus had no claims to settle, RRA had no obligation under the Indemnity Agreement to indemnify Blair, or obtain a release of Blair.

The flip side to Rainier's argument is that Rainier GSA—the entity that UIRC sued and that settled—is not bound by the Indemnity Agreement, and thus had no obligation to indemnify

Blair or obtain a release of Blair. Thus, Rainier argues that RRA cannot be liable based on a lawsuit and settlement in which it did not participate, and Rainier GSA cannot be liable based on the Indemnity Agreement to which it was not bound.

Blair's main argument in response is that Rainier "used the existence of Rainier GSA to settle UIRC's claims" without triggering RRA's obligations under the Indemnity Agreement, and that RRA and Rainier GSA are alter egos such that Rainier GSA can be bound by RRA's contractual obligations. There is no evidence in the record for Blair's first argument; no evidence that RRA participated in the lawsuit or settlement or otherwise directed Rainier GSA's involvement. The only way Rainier can be liable is if Rainier GSA and RRA are alter egos.

Under Illinois law, to establish alter ego liability, "(1) there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and (2) circumstances must be such that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." Wachovia Sec., LLC v. Banco Panamericano, Inc., 674 F.3d 743, 751-52 (7th Cir. 2012); see also, Main Bank of Chi. v. Baker, 86 Ill.2d 188, 205 (1981) (to establish one company is an alter ego of another, defendants must prove "that (1) it is so controlled and its affair so conducted that it is a mere instrumentality of another, and (2) it must further appear that observance of the fiction of separate existence would, under the circumstances, sanction a fraud or promote injustice"). When determining whether a unity of interest and ownership exists to justify disregarding separate corporate identities, courts look to a variety of factors, including failure to observe corporate formalities, missing corporate records, commingling of funds, failing to maintain an arm's-length relationship among related entities, and whether the corporation is a mere façade for a dominant owner. Wachovia, 674 F.3d at 752.

The parties are not contesting the truth or falsity of any particular facts, but rather point to different facts in support of their arguments. Blair argues that RRA and Rainier GSA are alter egos because the two entities share an office suite, Rainier's promotional and advertising materials for investors describe Rainier as one entity,[6] funds to pay the legal bills for this case have been commingled, and RRA and Rainier GSA share the same counsel. Rainier responds that, to the extent any funds are "commingled," each company accounts for intercompany transfers of funds, RRA and Rainier GSA have different owners, Blair and Kalt share legal counsel without one being the alter ego of the other, and the companies otherwise observe corporate formalities. Based on the uncontested facts in the record, the court finds that Blair has failed to demonstrate that RRA and Rainier GSA are alter egos.

In any event, there can be no injustice to Blair because Blair was the author of the scheme that created separate, corporate entities. Blair structured the transaction with RRA, and Blair suggested that RRA create Rainier GSA as a separate bankruptcy remote entity. It is further uncontested that Blair single-handedly authored the Indemnity Agreement and Engagement Agreement, presenting them as "take it or leave it" agreements, and those agreements do not bind Rainier GSA. Blair is in no position to claim that the corporate fiction <u>they created</u> is an injustice upon them.

For those reasons, Blair has failed to establish alter ego liability. The court finds that Rainier GSA was not bound by the Indemnity Agreement and had no obligations thereunder, and because RRA was never sued and never settled, RRA was never in breach of its agreements with

---

[6] There is no argument or evidence suggesting that Blair relied on these materials.

Blair.[7] The court grants summary judgment for Rainier on Counts I – IV of Blair's third-party complaint, and denies Blair's cross motion for summary judgment on the same Counts.

### III. Rainier's Counterclaim against Blair

Blair has moved for summary judgment on Rainier's counterclaim that Blair breached its contractual duties by breaching the duty of good faith and fair dealing. Rainier specifically asserts that Blair breached the duty of good faith and fair dealing by using UIRC documents as templates without disclosing UIRC's concerns to Rainier.

As the court explained at the motion to dismiss stage, the duty of good faith and fair dealing "does not create an independent cause of action," and "a party does not breach a contract merely because it acts in bad faith." Rainier Realty Acquisitions GP, LLC v. William Blair & Company, LLC, 2020 WL 919254, at *2-3 (N.D. Ill. Feb. 26, 2020). "Still, contract law forbids parties from invoking a contractual provision 'dishonestly to achieve a purpose contrary to that for which the contract has been made' … This bar against bad faith applies when 'one party to an agreement is given wide discretion, and the other party must hope that the discretion is exercised fairly." Id. (internal citations omitted).

Here, it is undisputed that Blair had a contractual obligation to "assist and advise" Rainier in securing financing, preparing solicitation materials, and structing deal documentation. As the court previously noted, Blair needed to fulfill its contractual obligations "with proper motive," and within the "the reasonable expectations of the parties." Id. Blair argues that it acted reasonably and with proper motive because: (1) Blair acted within the industry norm by using

---

[7] Based on this ruling, the court need not reach Rainier's arguments regarding Blair's willful misconduct.

template documents;[8] (2) Blair disclosed to Rainier that it was using prior deal documents as templates; and (3) because the documents at the heart of this case had not been submitted for copyright protection at the time the Rainier transaction closed, there can be no inference that Blair knowingly or intentionally submitted Rainier to copyright liability. In response, Rainier points to a series of statements between UIRC and Blair, claiming that Blair acted in bad faith by failing to disclose UIRC's concerns to Rainier.

Viewing the record and contracts as a whole, the court concludes that no reasonable jury could find for Rainier on its breach of contract claim. Blair did not breach its duty of good faith and fair dealing when it used the template documents, because: those documents had not yet been copyrighted; Rainier was aware Blair was using template documents; and Blair was conforming to industry standard. Further, Blair did not have a contractual (or other) obligation to inform Rainier of UIRC's concerns and communications with Blair. Blair advised Rainier and completed the Rainier transaction reasonably and otherwise acted within the reasonable expectations of the parties. No reasonable jury could find for Rainier on its breach of contract claim. The court grants Blair's motion for summary judgment.

## **CONCLUSION**

For these reasons, UIRC's motion for summary judgment on Counts I – IV of Blair's counterclaim (Doc. 429) is granted. Blair's motion for summary judgment on Counts I – III of Blair's counterclaim (Doc. 444) is denied. Rainier's motion for summary judgment on Counts I – VI of Blair's third-party complaint (Doc. 432) is granted. Blair's motion for summary judgment on Rainier's counterclaim and Counts I – IV of its third-party claims (Doc. 438) is

---

[8] Even one of Rainier's principals, Ken Dunn, admitted that he has never seen lawyers draft documents "organically," and there was nothing in the contract requiring Blair to draft Rainier's documents from scratch.

14

granted in part and denied in part. The court grants summary judgment for Blair on Rainier's counterclaim, but denies Blair's motion for summary judgement on Counts I – IV of its third-party claims against Rainier. Blair's motion to file a sur-reply (Doc. 499) is denied as moot.

This opinion, along with the court's earlier order (Doc. 414) holding that UIRC's copyrights were invalid, resolves all outstanding issues raised by the parties. After five years, this case is over. Civil case terminated.

**ENTER:**

**Robert W. Gettleman**
**United States District Judge**

**DATE:** June 30, 2022